The State v. Mary Stickley and Elmira Stickley.

1. **Evidence:** OPINION OF WITNESS: WHEN ADMISSIBLE. After a witness has stated the facts and circumstances of a transaction within his knowledge, he may then be asked his opinion respecting them. His conclusions based upon previous knowledge and not derived from the immediate facts to which he has testified would be inadmissible.

2. ——: CRIMINAL LAW: PRACTICE. When in a criminal trial improper evidence is admitted without objection, the failure to object waives the error in its admission.

3. **Criminal Law:** INSANITY: DISTINGUISHED FROM PASSION AND REVENGE. One who, in possession of a sound mind, commits a criminal act under the impulse of passion or revenge, which may temporarily dethrone reason and for the moment control the will, cannot nevertheless be shielded from the consequences of the act by the plea of insanity.

4. ——: ——: OFFENSE MUST BE DIRECT CONSEQUENCE OF. Insanity will only excuse the commission of a criminal act, when it is made affirmatively to appear that the person committing it was insane, and that the offense was the direct consequence of his insanity.

*Appeal from Benton District Court.*

THURSDAY, SEPTEMBER 23.

AT the April term, 1873, of the Blackhawk District Court, the defendants, Mary Stickley and Elmira Stickley, were jointly indicted with Richard George, for an assault with intent to murder one Byron Wright. Mary Stickley is the mother of Elmira, who, at the time of the commission of the offense charged, was about sixteen years old. Richard George was in the employment of Mary Stickley, and boarded and lodged at her house. There is some evidence that whilst he was there an engagement of marriage was made between him and Elmira. Wright took charge of a school very near to Mrs. Stickley's, and, at the solicitation of Mrs. Stickley and Elmira, came to board with them. It would seem from the evidence that Elmira became very much enamored of him, and that the mother was quite willing to promote and encourage an intimacy between them. On the Thursday before the commission of the assault, Wright made arrangements to board with Kingsly, one of the directors, and remained there Thursday night. On Friday, Mrs. Stickley and her daughter interrogated him about boarding at Kingsly's, and he informed them he thought of going. On Saturday, he told them positively he intended to go, and both urged him to stay.

The testimony of Wright on this branch of the case is as follows: "Both fell to abusing me; asked why I wanted to change my boarding place; Mrs. Stickley said if I would stay, she would give me what I owed her. I said that would be no object. Then she said she would give me what would be due her if I stayed to the end of my school. I said that would be no object. She then said, if you will stay and marry Elmira, I will give you the farm, and neither of us should want while she lived. I told her that would be no object. They ended their pleadings by Mrs. Stickley saying, 'Then, damn you, go,' repeated that several times; got very angry; said they would rather see me shot than go to Kingsly's. This was Saturday morning." Saturday evening both

again urged him to stay. Wright testifies: "Elmira came to me Saturday night and said, 'Mr. Wright, I will give you another chance; wont you give up going to Kingly's, and stay here?' I told her no, and further, I wished she would not ask me that again; that it was my privilege to go where I pleased; and she said, 'Look out, may be you will not go yet.'"

On Sunday morning, Elmira renewed her expostulations, and when informed that he would not stay, she said, "I had a notion to blow your brains out while you was in bed, but I will give you another chance."

When he went to church Elmira was weeping, and when he returned, her mother said, "She has been crying ever since you have been gone."

On Monday morning, Wright dressed himself and went out, saying he would go over to school. Elmira, her mother, and George, all asked him to eat. He said he would return at recess. At recess he came in and took his place at the table. Elmira came behind him and shot him in the back of the head. He took hold of the table, rose to his feet, and turned toward the outside kitchen door, and then fell to the floor on his face. He again arose and started to the door. When he reached the outside door, George was standing with his back against it, and, when he tried to get out, he pushed him away. This was repeated a half a dozen times. Wright then went to a broken glass in the window to get air, and George shot him in the left side of the head in front of the ear. Mrs. Stickley was present, and the evidence tends to show that she encouraged and abetted the act. Mrs. Stickley testifies that, after they retired Sunday night, Elmira told her Wright had insulted her on Friday night in the school house, but that she paid no attention to it because she knew Elmira had told things before that were not true, and that she had imagined things.

There was evidence tending to show that the father of Elmira was subject to fits of insanity, and that Elmira had insane spells; that there were peculiarities in her conduct at her monthly periods, and that the transaction in question occurred about that period. Upon the other hand, there was

evidence tending to show that there was nothing peculiar about the father of Elmira, except that he was a very passionate man, and that nothing unusual was descernible in the conduct of Elmira, previous to this event.

The jury found both defendants guilty as charged. The court sentenced Mary Stickley to the penitentiary for nine years, and Elmira Stickley, who at the time of sentence was nearly seventeen years old, to the reform school until she should attain her majority.

The defendants appeal.

*Boies, Allen & Couch*, for appellants.

The opinion of a witness respecting facts within his own observation is competent. (*Dewitt v. Barley*, 5 Selden, 371; and 17 N. Y., 340; *People v. Eastman*, 14 Id.; *Gibson v. Gibson*, 9 Geo., 329). On appeal in a criminal case, it is the duty of the court to examine the record without regard to technical errors or defects. (Code, Sec., 4538). The alleged rule that an act, which grows wholly out of an insane belief that a great wrong has been committed, is at the same time produced by a spirit of revenge, does not lay down a correct principle of law. As to whether or not a given act growing out of an insane belief that a wrong has been committed is the offspring of a spirit of revenge, is a question of fact for the jury. (*State v. Jones*, 50 N. H., 369.) It should appear not only that the accused was insane, but that the act for which she is indicted was the direct offspring of such insanity.

*M. E. Cutts, Attorney General*, for the State.

An unprofessional witness is not legally competent to express an opinion on the general question whether the mind of the accused was sound or unsound; his opinion must be limited to the specific facts he discloses. (*Clapp v. Fullerton*, 34 N. Y., 190; *O'Brien v. The People*, 36 N. Y., 276; *Real v. The People*, 42 N. Y., 270; *Hewlett v. Wood*, 55 N. Y., 634; *Pelamourges v. Clark*, 9 Iowa, 1, 15.) A new trial in civil cases will not be ordered for error in excluding evidence merely cumulative. (*Smith, Twogood & Co. v. Cooper & Clark*, 9

Iowa, 376.) Nor will a new trial be granted for newly discovered evidence of a merely cumulative character. (*Sturgeon v. Ferron*, 14 Iowa, 160; *Wilhelmi v. Thorington*, Id., 537; *Keyes v. Francis*, 28 Id., 321.) The admission of improper evidence without objection is not reason for granting a new trial. (*State v. Polson*, 29 Iowa, 143; *State v. Hamilton*, 32 Id., 572.)

DAY, J.—I. Immediately after the shooting, George and Elmira got into a sleigh, and she drove at a rapid rate to Cedar Falls, a distance of about a mile. A witness, Packard,

1. EVIDENCE: describes how she was dressed, her appearance and
opinion of
witness. manner of driving, and says he saw her a few minutes afterward in Taggart's store, and heard her talking but paid little attention to what she was saying. That she was very much excited and was relating something in regard to the occurrence.

He was then asked the following question: "Will you state from your knowledge before, and your acquaintance with her, from her conversation at that time, and her looks at that time, whether in your judgment she was then in her right mind?"

The question was objected to as incompetent and inadmissible, and the objection was sustained. In *Pelamourges v. Clark*, 9 Iowa, 1 (15), respecting the admission of opinion of witnesses, not experts, it is said: "The extent to which any of the authorities have carried the rule, even in the ecclesiastical courts of England is, that, after the witness has stated the facts and circumstances, then his conclusion or opinion derived from and resting upon them may be given." See, also, *Dunham's Appeal*, 27 Conn., 193. Tested by this rule, which has received the sanction of this court, and is abundantly sustained by authority, it seems quite clear that there was no error in excluding the question asked. The witness had described the appearance and manner of Elmira, but paid little attention to, and does not undertake to detail, what she said. He was asked to give his opinion whether she was in her sound mind from her conversation, which he had not detailed, and her looks, and *from his knowledge before and acquaintance with her.* Now, however proper it might have been for him

to express an opinion based upon her conversation and looks, if he had described her looks and detailed her conversation, so that the jury might have been put in possession of the facts upon which he based his opinion, and been enabled to estimate properly the value of his opinion, it is clear that he could not express an opinion from his former knowledge and acquaintance.

Such evidence would be a mere substitution of the opinion of a non-professional witness for facts. See the following authorities cited by appellee: *Clapp v. Fullerton*, 34 N. Y., 190; *O'Brien v. The People*, 36 Id., 576; *Real v. The People*, 42 Id., 270; *Hewlett v. Wood*, 55 Id., 634. See, also, the following cases, in which the rule of exclusion is carried to still greater extent: *Commonwealth v. Wilson*, 1 Gray, 337; *Commonwealth v. Fairbanks*, 2 Allen, 511; *Wyman v. Gould*, 47 Maine, 159.

II. The defendant introduced testimony tending to show that the defendant (Elmira) and her father had been temporarily insane at different times prior to the alleged offense. In rebuttal, the State called Lyman Davidson, who stated he knew Stickley, and was then asked the following question: "Did you know the treatment that he received from his wife?" The defendants objected to evidence of her treatment at other times than those in which it was claimed he was deranged. The objection was overruled, and defendants excepted.

2. ———: criminal law: practice.

The witness answered: "They were a very peculiar family; they were very rough, and would swear like pirates; knew of their having family quarrels; the boys could not live at home; know the general character of Mrs. Stickley; it is very bad." This answer, it will be observed, is not at all responsive to the question. It does not appear that any effort was made to exclude it from the jury. The mere asking of the question, if erroneous, worked no prejudice to defendants. The answer was permitted to remain without objection, and, even if it should be conceded that it contains improper evidence, it constitutes no ground for reversing the case. Where improper evidence is permitted to remain in a criminal case, without objection, the error in its admission is waived. *State v. Polson*, 29 Iowa, 133.

III. The court instructed the jury as follows:

"8. The nature, character, and degree of insanity, which exonerates a party from criminal responsibility, is not easily

*3. CRIMINAL LAW: insanity: distinguished from passion and revenge.* explained or understood. It is not necessary that it should be shown by the evidence, that the defendant at the time of the commission of the act did not know right from wrong, as to her acts in general. The inquiry must be directed to the act charged. If you believe from the evidence that the defendant's act in shooting Wright (if she did shoot him), was caused by mental disease or unsoundness, which dethroned her reason and judgment with respect to that act, which destroyed her power rationally to comprehend the nature and consequences of the act, and which, overpowering her will, inevitably forced her to its commission, then she is not in law guilty of any crime, and your verdict as to her should be, not guilty.

*But if you believe, from all the evidence and circumstances in the case, that she was in the possession of a rational intellect or sound mind, and from some real or fancied injury she allowed her passion to escape control, then, though passion or revenge may, for the time, have driven reason from its seat and usurped it, and urged the defendant, with a force at the moment irresistible, to desperate acts, she cannot claim for such acts the protection of insanity, and she is guilty.* The practical question for you to determine from all the evidence is, whether passion and revenge, or insanity, was the ruling force and controlling agency which led to the commission of this act. If you believe that the shooting was the direct result or offspring of insanity, you should acquit; if of passion or revenge, you should convict. You should indulge in no prejudice against the defense, but give it thoughtful, thorough, and dispassionate consideration, and yet the interests of society and the welfare of the State demand that this defense ought not to be regarded as sufficient to exculpate, unless you believe from the evidence that the propensity to commit the act existed in such violence as to subjugate the intellect, control the will, and render it impossible for the defendant to do otherwise than to yield to the insane impulse.

*In other words, it should appear not only that the mind of the accused was insane, but that the act for which she is indicted was the direct offspring of such insanity. This being shown, responsibility is annulled, but not otherwise.''* To this instruction defendants excepted.   The parts objected to are indicated in italics.   It is conceded that the first paragraph objected to was borrowed from the rule suggested by this court in the *State v. Felter*, 25 Iowa, 67 (84), and that it is almost a literal copy thereof, with the addition of the words "or revenge," after the word passion.

Whilst no objection is made to this rule in a proper case, it is claimed that the facts in the case of *The State v. Felter* and in this case are so essentially different as to render a rule, which would be entirely safe and proper in one case, equally unsafe and improper in the other.   It is urged that the rule has no application to any theory of either the prosecution or defense. It is insisted that the State claims that the assault was the consummation of a deliberate plan, formed by three rational beings, to take the life of Wright, whilst the defense claims that it was the outgrowth of an insane delusion upon the part of Elmira, that he had locked her in a school-house and attempted her ruin.

We are unable to see wherein the instruction is not pertinent to the case.   The defense claimed that Elmira, at the time of the commission of the act, was laboring under such insane delusion, impelling her to the act, and overcoming her will, that she is not responsible for her conduct.   It was incumbent upon the court to distinguish between insanity and mere passion or revenge, and to instruct the jury that the latter, though it may for a time have driven reason from its seat, would furnish no excuse.   This portion of the instruction must be taken in connection with that which immediately follows, in which the court says:  " The practical question for you to determine from all the evidence is whether passion and revenge or insanity was the ruling force and controlling agency which led to the commission of this act."

From all the circumstances disclosed the jury were warranted in finding that Elmira was actuated by a spirit of

revenge, or was thrown into a violent passion, because Wright would not listen to her expostulations, and was determined to change his boarding place. And, if she allowed this feeling of passion or revenge to so take-possession of her mind as to impel her to an act of violence, she is still responsible therefor, if her act was the outgrowth of her passion or revenge and not of her insanity. This we understand to be the doctrine of the instruction, and it seems to us to be unobjectionable.

The next paragraph objected to is a literal quotation from 4. ——: ——: *The State v. Felter* (see page 85). But it is offense must be direct claimed that the question of its correctness was consequence of. not before the court, and that the language can only be considered as *dicta*. We think the paragraph cannot be regarded as mere *dicta*, and further that it is not fairly vulnerable to the criticism made upon it. It is claimed that the rule here recognized casts upon the defendant the burden of proving by substantive testimony not only that she was insane, but that the act for which she was indicted was the direct offspring of such insanity. This is not, we think, the fair construction to be placed upon this paragraph, when taken in connection with the whole instruction. It means only that, from all the facts and circumstances of the act as disclosed by the testimony, if defendant would claim exculpation on the ground of insanity, it must be made to appear that she was insane, and that the offense was the offspring of such insanity. Instances are numerous in the works upon medical jurisprudence, in which the mind, respecting some particular matter, rests under a peculiar delusion, and with respect to all matters having no connection therewith appears perfectly sane. Whilst such a person could not be regarded as sane, yet he would be criminally responsible for his acts, unless they could be attributed to his particular delusion.

IV. The evidence as to the sanity of Elmira was conflicting, and it does not warrant us in disturbing the verdict which found her sane. The jury were fully warranted in finding that Mary Stickley was present, and that she aided, abetted and encouraged the assault.

No error is apparent in the record.

AFFIRMED.