STATE OF IOWA, Appellee, v. HUGHES BOSTON, Appellant.

No. 46105.

1250

OCTOBER 19, 1943.

Henry H. Griffiths, of Des Moines, for appellant.

John M. Rankin, Attorney General, Don Hise, Assistant Attorney General, Francis J. Kuble, County Attorney, and Ralph D. Moore, Assistant County Attorney, for appellee.

GARFIELD, J.—In the early evening of November 27, 1941, Thanksgiving Day, defendant shot and killed one Lavelle Jackson. For six months defendant, a common laborer, had rented living quarters for himself, wife, and baby, in Jackson's home. When defendant returned from work on November 25th, his wife and baby were gone and he saw his wife's torn undergarments on the floor. The wife soon returned, crying, and told defendant that Jackson had raped her that day and that she had him arrested. After his wife had related the details of the attack upon her, defendant went to the police station to inquire what had been done with Jackson. Defendant was

later informed by an assistant county attorney that there was no case against Jackson because of a lack of evidence to corroborate the wife's charge. Defendant was also informed that Jackson had told the police he had been intimate with defendant's wife since July, with her consent. The police did not hold Jackson.

Defendant says he was greatly upset by the news of Jackson's conduct, by what Jackson had told the police regarding his wife, and by their attitude toward prosecuting Jackson. He says he was unable to sleep or eat for the two nights and days before the shooting. On the morning of Thanksgiving Day, defendant and his family moved from the Jackson home. That afternoon defendant attempted, without success, to borrow a gun from three different persons. From a fourth acquaintance he obtained a gun. From another he procured a shell, then went to the rear of the Jackson home and fired one shot, which struck Jackson in the region of the heart. He then gave himself up to the police. Defendant claims he thought he saw his wife in Jackson's company at the time of the shooting although it is admitted she was not there, that he has no recollection of firing the fatal shot, and if he did so it was because he was driven insane.

I. Defendant put in evidence in detail, by his wife, his mother-in-law, and himself, what his wife told him regarding the attack upon her by decedent. Several police officers testified on cross-examination by defendant that he told them decedent had raped his wife. Defendant sought to prove not only what his wife told him regarding the attack, and the effect upon him, but that the charge was true. The court ruled that the truth of the charge was immaterial and excluded the offer. Defendant complains of the ruling.

It is doubtful if the ruling was prejudicial because defendant's wife, the only person except Jackson with personal knowledge of the matter, testified at length concerning decedent's attack upon her. While she purported to be repeating what she told defendant, much of her testimony is a recital of what happened during the attack rather than of what she told defendant. The undergarments she says decedent tore from her were received in evidence. Defendant testified he believed his

wife's charges were true. It is questionable if the offered proof of the truth of the charge would have benefited defendant. However that may be, the ruling was proper.

There is one decision, and perhaps others, that evidence of intimacy between defendant's wife and deceased is admissible in a homicide case to corroborate testimony that she communicated such fact to defendant before the killing. Bereal v. State, 88 Tex. Crim. Rep. 138, 225 S. W. 252. However, what we believe to be the weight of authority and the better reasoning support the ruling below. Bryan v. Commonwealth, 131 Va. 709, 109 S. E. 477; Shipp v. Commonwealth, 124 Ky. 643, 99 S. W. 945, 10 L. R. A., N. S., 335, 340; People v. Hurtado, 63 Cal. 288, 290 [affirmed 110 U. S. 516, 4 S. Ct. 111, 292, 28 L. Ed. 232]. These decisions proceed on the theory that the important inquiry is what the accused was told regarding the conduct of deceased, and its effect upon him, before the killing; that the truth or falsity of the wife's confession of infidelity with decedent could not influence defendant's conduct; that if defendant were permitted to prove the truth of the charge, the State should be allowed to show its falsity. This would lead to an inquiry into a collateral matter and divert attention from the rightful issues.

But, defendant argues, the State put in issue the truth of his wife's charge and therefore he should be allowed to substantiate it. It is true that testimony otherwise inadmissible is frequently received because evidence was introduced on that subject by the adverse party. 31 C. J. S. 913, section 190; 20 Am. Jur. 262, section 274; Maasdam v. Jefferson County F. M. I. Assn., 222 Iowa 162, 165, 268 N. W. 491. But this rule is not applicable here.

In contending the State put the truth of the charge in issue, defendant relies principally on testimony elicited by him on cross-examination of decedent's wife that her husband had told her on the day he was arrested he had been going with Mrs. Boston since July "and she got mad at him because he would not buy her a dress, and she had him arrested." It is said this is evidence of the falsity of Mrs. Boston's charge. We do not so regard it. But in any event, it was testimony brought out

by defendant and not by the State. A party is not permitted on cross-examination to bring out improper and immaterial matter and then show its falsity. The testimony of police officers that defendant told them Jackson had raped his wife was also elicited by defendant on cross-examination.

II. Error is assigned to the admission in evidence of two written statements signed by defendant and a third statement first signed by defendant's wife and then read and signed by defendant as true. The three statements were taken by the officers on the night of the tragedy. It is contended these exhibits were improperly admitted because not shown to have been voluntarily made and because they contain only a part of what defendant told the officers. There was no error in admitting these exhibits.

Each statement signed by defendant recites that it is made of his own free will. One of defendant's statements recites that the exhibit signed by his wife is true and was read and signed by him. There is little, if any, evidence that any of the exhibits was not voluntarily given. When the statement first signed by defendant was offered in evidence, defendant's only objection was that it omitted part of what defendant had told the officers.

The court fully instructed the jury, in terms favorable to defendant, that before the exhibits could be considered it must first be satisfied beyond a reasonable doubt that the papers were signed freely and voluntarily, without threats, violence, or putting in fear, and with full knowledge of their contents. The court, to defendant's advantage, did not tell the jury that a confession which purports to be freely given is prima facie voluntary and the burden to show the contrary rests upon a defendant. See State v. Bisanti, 233 Iowa 748, 9 N. W. 2d 279, 281; State v. Plude, 230 Iowa 1, 6, 296 N. W. 732.

Testimony that the exhibits did not contain all defendant told the officers did not render them inadmissible. All of the written statements were offered by the State. They purport to be complete and not partial or unfinished statements. As frequently happens, defendant as a witness denied having told the officers some of the things contained in the exhibits and testified that some statements orally made by him to the officers

were omitted from the writings. However, defendant and his wife testified fully as to what they told the officers and defendant's version of the whole transaction resulting in the statements was before the jury. See 20 Am. Jur. 425, section 488; 22 C. J. S. 1439, section 820; annotation 2 A. L. R. 1017.

■ III. Defendant complains of the court's refusal to give his requested Instruction I on insanity and the giving of Instruction 12 on that subject. Defendant is not entitled to a review of these matters because no proper exception was taken to the refusal of the request or the giving of the instruction. No exception was taken to Instruction 12. Defendant's requested Instructions I and II were each marked by the court "Requested and refused. Defendant excepts." No other exception to the refusal of No. I was taken; no grounds of exception were specified. Defendant filed a motion for new trial and exceptions to instructions, but neither made any reference to the refusal of request No. I. These exceptions to instructions did, however, except to the refusal of request No. II on another subject.

Section 11495, Code, 1939, provides:

"Any party may take and file exceptions to the instructions of the court * * * or to the refusal to give any instructions as requested * * * but all such exceptions shall specify the part of the instructions as excepted to, or of the instructions requested and refused and the grounds of such exceptions."

This statute is applicable to criminal as well as civil cases. Code section 13876; State v. Young, 230 Iowa 1119, 1120, 300 N. W. 263, 264, and cases cited; State v. Griffin, 218 Iowa 1301, 1308, 254 N. W. 841, and cases cited.

The notation by the court of a general exception to the refusal of request No. I was not a compliance with section 11495; no grounds of exception were specified and there is no basis on which to assign error here. Thomas v. Charter, 224 Iowa 1278, 1284, 278 N. W. 920, and cases cited; Humphrey v. City of Muscatine, 217 Iowa 795, 253 N. W. 57, and cases cited; State v. Derry, 202 Iowa 352, 356, 209 N. W. 514; State v. McCumber, 202 Iowa 1382, 1385, 212 N. W. 137. It is but fair

to say that counsel who now represents defendant did not try the case below.

Notwithstanding the condition of the record, we may say that we find no reversible error in Instruction 12 or in the refusal of request No. I. Instruction 12 appears to have been taken largely from instructions which we have held not reversible error in State v. Felter, 25 Iowa 67, 83, 84; State v. Stickley, 41 Iowa 232, 238, 239; State v. Novak, 109 Iowa 717, 745, 79 N. W. 465; State v. Wegener, 180 Iowa 102, 111, 162 N. W. 1040, and State v. Buck, 205 Iowa 1028, 1034, 219 N. W. 17. The argument for defendant is answered by what we have said in those cases.

■ IV. The tenth instruction defines manslaughter as the unlawful and felonious killing of a human being, without malice, express or implied, and without deliberation or premeditation (the foregoing is a substantial repetition of part of Instruction 4) *as in a sudden and unexpected quarrel, without any intent to inflict great or permanent bodily injury,* or if there be an intent to take life, that such intent be formed on a sudden impulse and immediately executed without deliberation, premeditation, or malice. Defendant excepted to the foregoing because the jury was not told that the killing must have been intentional, and to the portion we have italicized because, it is said, it injected the matter of involuntary manslaughter, of which there was no evidence.

Our statute, Code section 12919, does not define manslaughter. The common-law definition, the unlawful killing of another without malice express or implied, prevails in Iowa. It is commonly divided into voluntary and involuntary manslaughter.. The former is committed in a sudden heat of passion due to adequate provocation. Involuntary manslaughter is an unintentional killing without malice in the doing of an unlawful act not amounting to a felony or of some lawful act in an unlawful manner. State v. Walker, 133 Iowa 489, 496, 110 N. W. 925; 26 Am. Jur. 165, section 17.

The authorities do not agree on whether an intent to kill is necessary to constitute voluntary manslaughter. 26 Am. Jur. 167, 168, section 19. It is said that a specific intent to

kill is not an essential element of the crime. 29 C. J. 1128, section 116 [40 C. J. S. 904, section 44]. It is true we have referred to voluntary manslaughter as an intentional killing and said that therein it is distinguished from involuntary manslaughter. State v. Johnson, 211 Iowa 874, 880, 234 N. W. 263; State v. Korth, 204 Iowa 1360, 1362, 217 N. W. 236. However this may be, we are agreed that the exceptions to Instructions 4 and 10 present no reversible error in the absence of any request by defendant to instruct on the subject.

Instruction 10 required a finding, in order to convict of manslaughter, that the killing was both unlawful and felonious. Instruction 5 defines "unlawfully" as without legal right or excuse, and "feloniously" as with criminal intent. See 36 C. J. S. 633, 634. Thus the trial court sufficiently eliminated as accidental, unintentional killing. Furthermore, Instruction 10 states that manslaughter may be committed where there is an intent to take life, if "such intent be formed on a sudden impulse and immediately executed without deliberation, premeditation or malice." We have approved this statement. State v. Johnson, supra. Perhaps the portion of the instruction italicized above might well have been omitted but its inclusion in that connection, in view of the whole instruction, was not reversible error.

The trial court should have told the jury in Instruction 10, as defendant now argues, not to convict of manslaughter if the defense of insanity was established. However, the exceptions to instructions raised no such contention and there is no basis for urging the point here. See authorities in Division III. Instruction 12 plainly states that if defendant was insane at the time of the claimed shooting he is not guilty of any crime.

V. After the verdict and before sentence defendant filed a verified application for parole by the court under Code section 3800. It recited that defendant had not previously been convicted of a felony, was free from venereal disease, and had obtained apparently permanent employment. Following the denial of his motion for new trial, defendant's counsel read the application for parole to the court who stated "that he never allowed a parole; that in all his experience on the bench he had never allowed a parole, and would not do so in this case; and

that no evidence would be received or hearing had on that matter," to which defendant excepted. The county attorney admitted of record that defendant was eligible for parole under section 3800.

Defendant then produced six persons who were character witnesses upon the trial and asked that they be sworn and permitted to testify that defendant was honest, industrious, peaceable, and of good character. He also produced Mr. Moffatt, superintendent of the Des Moines water plant, to testify that defendant would have an apparently permanent job if paroled. He also produced a written statement returned by the jury with its verdict recommending leniency for defendant and written statements signed by six of the twelve jurors and over nine hundred citizens of Des Moines recommending a bench parole. Defendant also asked to be sworn to tell of his past work, his prospects for permanent employment, and other matters germane to his application. The court declined all of the offers and summarily denied the application. Of this defendant complains.

Trial courts have broad discretion in the granting or withholding of bench paroles and an appellate court will seldom interfere with their determination of such matters. 24 C. J. S. 781, 782, section 1878. Where the record is silent as to the basis for denying a parole, it will be presumed there was good reason therefor. 24 C. J. S. 610, 611, section 1794. Here, however, the reason for the court's action clearly appears of record. We think here there was an abuse of discretion in the court's *refusal to consider* defendant's application *because "in all his experience on the bench he had never allowed a parole."*

This defendant is a negro laborer (decedent was also colored) who was without funds to employ counsel. One was appointed by the court to defend him. Defendant was previously tried on this same indictment and the jury disagreed. True, he stands convicted of a serious crime. Perhaps his application for parole should be denied. There are doubtless cases where evidence in connection with such an application is of little aid and the court would be justified in declining to hear testimony for or against the application. Perhaps this is such

a case. On these matters we express no opinion. What we hold is that this defendant was entitled to have his application considered *on its merits.*

Our decision finds support in People v. Jones, 87 Cal. App. 482, 495, 262 P. 361, 367, 368; People v. Miller, 112 Cal. App. 535, 297 P. 40; People v. Freithofer, 103 Cal. App. 165, 284 P. 484. In both the Jones and Miller cases the trial court refused to consider an application for probation because it believed probation should be denied to one who had not pleaded guilty. On appeal this was reversed. The following from the opinion in the Jones case is applicable here:

"In the exercise of its discretion the court passing on applications for probation is expected to select only the deserving cases for the bestowal of clemency, but this cannot be done if the court arbitrarily refuses to hear or consider their applications. In the present case, the court entirely departed from the letter and the spirit of the probation law in refusing to entertain appellant's application merely because he had not pleaded guilty. * * *

"Suppose the court should in response to a defendant's application for probation say to him, 'I do not like the color of your hair,—or, you are of the black race,—and for that reason I will not hear your application.' Would the defendant be obliged to submit to such conduct without remedy? Such a ruling would clearly be an abuse of discretion because not guided or controlled by principles established by law therefor, but made with reference to some criterion not provided for or countenanced by law. The same is true of the ruling here complained of. * * *

"Herein the case differs from the ordinary one where the court has considered a defendant's application for probation on its merits and either refused to entertain the application or refused to grant it when heard * * *

"If the record is silent as to the grounds of the ruling, the presumption would be, under the general rule as to presumptions on appeal, that it was founded upon a consideration of the merits of defendant's application; but here there is an affirmative showing to the contrary."

We conclude the only prejudicial error is the court's refusal to consider defendant's application for parole and that the case should be remanded for that purpose. Defendant in his brief asks for such relief if a reversal and the granting of a parole by this court are denied. Especially in view of defendant's request, the somewhat unusual disposition we make of the case seems entirely proper. Code section 14010. State v. Jergensen, Iowa, 202 N. W. 13; State v. Morrison, 221 Iowa 3, 8, 265 N. W. 355; State v. Dill, 197 Iowa 208, 210, 196 N. W. 992; State v. Marx, 200 Iowa 884, 886, 205 N. W. 518; 24 C. J. S. 1119, section 1950a(2).

The judgment below is affirmed with this modification: The judgment is without prejudice to the right and duty of the court to consider and determine on its merits, in the exercise of a legal discretion, defendant's application for parole under Code section 3800. The cause is remanded with instructions so to consider and determine said application.—Modified and affirmed and remanded.

OLIVER, HALE, BLISS, and SMITH, JJ., concur.

MULRONEY, C. J., and MILLER, WENNERSTRUM, and MANTZ, JJ., dissent as to Division V and a remand of the case.