**STATE of Iowa, Appellee,**

v.

**Roger COLE, Appellant.**

**No. 53369.**

Supreme Court of Iowa.

May 6, 1969.

C. A. Frerichs of Waterloo, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., and Roger F. Peterson, County Atty., for appellee.

SNELL, Justice.

Defendant appealed from judgment and sentence for breaking and entering. He claims violation of his rights at time of sentence.

Defendant has had counsel at all times.

On May 31, 1968 defendant was charged by county attorney's Information with the crime of breaking and entering in violation of section 708.8, Code of Iowa.

On June 12 after preliminary formalities defendant pleaded guilty. Time for sentence was set and a pre-sentence investigation report was requested by the court. A report in writing was made and signed by the resident parole agent. Section 247.20, Code of Iowa, as amended by chapter 219, Laws of the 62nd General Assembly, authorizes such an investigation.

The report was comprehensive. It described defendant, named co-defendants (defendant's wife and another man were implicated), set forth the official version and defendant's version of the offense and noted defendant's prior arrests and convictions. It then set out in considerable detail the family history of his mother, father, brothers, sisters and defendant's personal history. Defendant's religion, health, habits, education, employment record, marital status and economic condition were stated.

Defendant at age of 24 had been married twice. His employment record was not good. During the eight years prior to the report he had for various periods of time had 11 different jobs, twice for periods as short as one and one-half weeks. He gave the following reasons for the termination of his several jobs: Suffered normal layoff; left because of a better job offer; left because he did not like job; left be-

cause he did not agree with company policy and quit; company closed down; left because of seasonal lay-off; left because he was not satisfied with wages; left because plant closed down; left because of disagreement with foreman; was fired for unknown reason.

From the time of his last job in 1967 (he only worked three weeks in 1967) until the time of his arrest he had not worked. We quote:

"From that date until present subject has had not [sic] work. Lived off of family. Subject claims the reason he has not held a steady job down since that date is that he cannot find anything he likes."

Sentencing originally set for July 3 was continued to July 8. At that time defendant appeared in open court with counsel.

This from the record:

"Upon inquiry from the court the defendant indicated that there was no reason he knew of, legal or otherwise, why the sentencing should not proceed at that time.

"The court then reviewed the pre-sentence report with defendant and counsel. The court noted corrections in the report to the effect that defendant had never served any time at Eldora and that upon his first felony conviction defendant had received a suspended sentence and had been placed on probation.

"After inquiry by defense counsel the court stated for the record that the author of the pre-sentence report had, in addition, to furnishing the written statement recommended orally to the court, in the absence of counsel, that defendant should receive a prison sentence and that defendant could not be successfully supervised if he were placed on probation. The author of the report was Richard M. Sorci, a parole agent of the Board of Control.

"Defense counsel then asked to call Mr. Sorci, who was present in court, as a witness for the purpose of examining the validity of Sorci's conclusion that defendant was not a fit subject for probation.

"Counsel for the state objected to such procedure on the basis that pre-trial reports are confidential and discretionary with the court and that it would be against public policy to allow defendant's counsel to examine a parole agent for the Board of Parole.

"Defendant stated that the court's failure to allow defendant's counsel to examine Sorci would be in violation of defendant's right to counsel under the 6th and 14th Amendments to the United States Constitution, and defendant's statutory right to counsel under Section 777.5 [sic] of the Iowa Code.

"The Court then denied defendant's request to examine Sorci and the defendant took the stand in his own behalf."

Defendant testified as to his conversation with the parole agent and that he thought he could get a job.

The court sentenced defendant to imprisonment in the reformatory.

■ I. Defendant had a constitutional and statutory right to counsel. Amendment #6, Constitution of the United States, Article I, Section 10, Constitution of Iowa, Section 775.4, Code of Iowa.

The right to counsel extends to the sentencing proceeding. Losieau v. Sigler, Warden, 406 F.2d 795, United States Court of Appeals, Eighth Circuit, decided February 4, 1969 and cases cited therein.

II. What is commonly called a "bench parole" is authorized by section 247.20, Code of Iowa. This section to the extent applicable here provides: "The trial court * * * may * * * suspend the sentence and grant probation to said person during good behavior. * * *" Section 247.21 provides for the custody, care and supervision of the person to whom probation is granted by a parole agent or agency designated by the court.

■ Section 247.20 says the court "may" suspend sentence. The granting of a suspended sentence and parole is a matter of

grace, favor, or forbearance. It is not a matter of right. Pagano v. Bechly, Judge, 211 Iowa 1294, 232 N.W. 798; Lint v. Bennett, 251 Iowa 1193, 104 N.W.2d 564; Curtis v. Bennett, 256 Iowa 1164, 131 N.W.2d 1; State v. Rath, 258 Iowa 568, 139 N.W.2d 468.

III. Trial courts have broad discretion in the granting or withholding of bench paroles and an appellate court will seldom interfere with their determination of such matters. There is, however, a duty to consider and determine an application for parole. State v. Boston, 233 Iowa 1249, 11 N.W.2d 407. See also second appeal in the same case, 234 Iowa 1047, 14 N.W.2d 676.

In that case defendant had been indicted for murder and convicted of manslaughter. We quote from the opinion on the first appeal, page 1256 of 233 Iowa, page 411 of 11 N.W.2d:

"After the verdict and before sentence defendant filed a verified application for parole by the court * * *. [D]efendant's counsel read the application for parole to the court who stated 'that he never allowed a parole; that in all his experience on the bench he had never allowed a parole and would not do so in this case, and that no evidence would be received or hearing had on that matter * * *.'"

Defendant produced witnesses and asked to be sworn to testify. The court declined all the offers and summarily denied the application. We held defendant was entitled to have his application considered on its merits and reversed and remanded, for that purpose only.

Following remand the trial court held a hearing, listened to arguments, filed a written ruling and again denied parole. Defendant again appealed. We held that the trial court had performed the duty required and affirmed. We said:

"The scope of the inquiry is and should be largely in the hands of that official. * * * No one convicted of a crime can demand a parole as a matter of right. * * * We are not prepared to hold that the court may take into consideration nothing other than the record of the trial * * *." loc. cit. 1051–1052 of 234 Iowa, loc. cit. 679 of 14 N.W.2d.

From these pronouncements it is clear that a trial court has a duty to hear an application for parole but has wide discretion in what must be considered in granting or denying the application.

IV. In the case before us defendant concedes that sentencing procedures are governed by different evidentiary rules than the trial itself; that the sentencing judge should be "in possession of the fullest information possible concerning the defendant's life and characteristics"; that "a sentencing judge should not be denied an opportunity to obtain pertinent information by requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial."

Defendant cites Williams v. People, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 and State v. Delano, Iowa, 161 N.W.2d 66. These cases are of no help to defendant and in fact amply support the position of the state.

Here the trial court stated that he had received an oral recommendation against probation from the parole agent. Assuming, arguendo, that the court considered the recommendation, there is no indication that the court abdicated its responsibility to the parole agent.

Defendant was not denied the right to testify. He was not denied the right to call witnesses in his own behalf. He was not permitted to call the parole agent "for the purpose of examining the validity of Sorci's conclusion that defendant was not a fit subject for probation."

A trial in a criminal case is an inquiry as to facts; a search for the truth of the charge made against the defendant. Rigid rules of procedure and admissibility

of testimony are followed. Opinions and conclusions of witnesses as to the guilt or innocence of the accused are not received. After guilt has been determined and the question of probation arises the same rigid rules do not apply. The sentencing judge may then resort to such sources of information as he thinks might be helpful to his judgment as to what should be done with defendant. As said in Boston, supra, the scope of the inquiry is in his hands. The responsibility and decision is the court's. Defendant may not successfully challenge the soundness of the trial court's discretion even though involved therein were conclusions or matters not ordinarily admissible. As said at the end of the second Boston opinion, supra, "Whether the decision was as some other court would have decided is beside the point." loc. cit. 1053 of 234 Iowa, loc. cit. 680 of 14 N.W.2d.

■ V. Incidentally, although we do not base our opinion thereon, the information given by defendant to the pre-sentence investigating parole agent indicated reasons for his conclusion that defendant was not a fit subject for probation. Past personal record and a job for the future are important considerations. Defendant's personal record was not commendable and his employment record was bad. Previous probation had been tried and obviously had not resulted in reform. He was in trouble again for a similar offense. Defendant had not worked for several months. Although he had not been interviewed he had called about a job and thought he could get it. His tentative plans were that he would like to find a job in Iowa City.

VI. Defendant's complaint is that denial of the right to examine the validity of the parole agent's conclusion was a denial of defendant's right to be effectively represented by counsel at a critically important proceeding. This argument proceeds from a faulty premise. The hearing did not involve any "right" of defendant to probation. It was a hearing to determine whether the sovereign state against which defendant had offended should grant "grace, favor or forbearance."

Section 247.26, Code of Iowa, provides that a suspension of sentence may be revoked at any time without notice by the court or judge. A defendant has no vested right to a parole under section 247.20 and acquires none by parole except as limited by section 247.26. In State v. Rath, supra, a case involving revocation of parole, we commented on and reaffirmed our previous holdings as to the status of a defendant.

If defendant's request for probation does not rest on a "right" (we have repeatedly said it does not) and the trial court is not limited as to sources of information it follows that it was not error to refuse examination into the validity of a recommendation the court was in no way bound to accept.

VII. Our recent consideration of issues comparable to the case at bar appears in State v. Delano, supra. We need not repeat at length the analysis and citation of authority.

■ During sentencing procedure defendant does not have a constitutional right to confront all witnesses against him.

"* * * if the court could not protect the sources of its information, those sources would dry up. * * * [R]efusal to disclose presentence investigation report is not a violation of due process of law. [Citations] * * *

"But the sentencing judge may consider information, even though obtained outside the courtroom, from persons whom the defendant has not been permitted to confront or cross-examine. * * *

"The sources of confidential information need not, however, be disclosed.

"'* * * The main consideration against full disclosure is the prospect that the revelation of certain material given the probation officer in confidence, would result in the destruction of the sources of such material and its availability—a conse-

quence which would be highly prejudicial to the difficult task of imposing a proper sentence. * * *' " (loc. cit. 70, 71 and 72 of 161 N.W.2d 66)

In State v. Patterson, Iowa, 161 N.W.2d 736, 737, in commenting on the statutory authority for pre-sentence investigation, we said:

"They permit, but do not require, the trial court to order a pre-sentence investigation. The statute leaves the use of such procedure to the discretion of the trial court."

 VIII. We conclude that defendant had neither constitutional nor statutory right to examine the investigating officer as to the validity of his conclusion. There was no abuse of discretion on the part of the trial court. The Supreme Court of the United States in Gregg v. United States, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442, decided April 2, 1969 said: "Pre-sentence reports are documents which the rule does not make available to the defendant as a matter of right. There are no formal limitations on their contents, and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged."

While the sentencing process is not immune from scrutiny we find here no abuse of the trial court's discretion.

Defendant's right to counsel at the time of sentence and his right to be heard in support of an application for parole do not extend to the point of requiring examination of an investigating officer as to the validity of his opinion.

The case is

Affirmed.

GARFIELD, C. J., and LARSON, MOORE, STUART and LeGRAND, JJ., concur.

MASON, RAWLINGS and BECKER, JJ., dissent.

MASON, Justice.

I dissent and would set aside the judgment sentencing defendant and remand the case to the trial court for further proceedings at the sentencing stage because the trial court refused to permit defendant's counsel to cross-examine the parole officer at the sentencing process.

As stated by the majority, "After inquiry by defense counsel the court stated for the record that the author of the pre-sentence report had, in addition, to furnishing the written statement recommended orally to the court, in the absence of counsel, that defendant should receive a prison sentence and that defendant could not be successfully supervised if he were placed on probation." The author of the report was Richard M. Sorci, a Board of Control parole agent.

Defense counsel then requested permission to call Mr. Sorci, who was present in court, as a witness for the purpose of determining by examination the basis of his opinion defendant was not a fit subject for probation.

After the State's objection that such procedure would be against public policy the court denied defendant's request.

In this appeal defendant is not challenging his conviction resulting from his plea of guilty. He asks only for a remand of the case to the trial court so he may test by cross-examination validity of certain opinions which were material factors in determining his sentence before it is imposed.

Stated in other words, defendant merely seeks opportunity to challenge the conclusion sought to be drawn, to determine whether it is based on logic or prejudice and, if the latter, to refute and discredit the opinion.

I. I have no quarrel with much of what is said in announcing general propositions of law in Divisions I through V of the majority opinion. My disagreement is with Divisions VI and VIII.

In Division VI the majority states, "Defendant's complaint is that denial of the right to examine the validity of the parole agent's conclusion was a denial of defendant's right to be effectively represented by counsel at a critically important proceeding. This argument proceeds from a faulty premise. The hearing did not involve any 'right' of defendant to probation. It was a hearing to determine whether the sovereign state against which defendant had offended should grant 'grace, favor or forebearance'."

Although recognizing the sentencing process is not immune from scrutiny the majority fails to state why a probation officer should be immune from inquiry as to factual basis giving rise to his opinion defendant could not be successfully supervised if placed on probation.

I believe opportunity for such criticism could improve the accuracy of facts on which the sentencing judge relies.

Defendant makes no contention he has a "right" to a bench parole as suggested in the quoted portion from Division II, supra, but that he is "entitled only to justice".

In the two errors assigned defendant contends (1) the trial court deprived him of his constitutional and statutory right to assistance of counsel by prohibiting defense counsel from examining a parole agent as to the validity of the agent's conclusions defendant should receive a prison sentence since he was not supervisable. The conclusion having been orally communicated to the court prior to the sentencing hearing and outside the presence of defendant and counsel and (2) the court's refusal to permit defendant's calling the parole agent as a witness to test the validity of his adverse opinions constituted procedural conduct prejudicial to defendant.

His position is that he does have a right to have standards of due process applied when the court receives information on which its decision will be based.

"* * * The traditional Anglo-American conception of due process, applicable as well to administrative as to judicial proceedings, includes the fundamentals of the adversary system: Assistance of counsel; disclosure of legal and factual materials to be considered by the tribunal; and opportunity for confrontation, cross-examination, and rebuttal. Our traditional high regard for those procedures rests on the judgment that in the long run they serve to make the fact finding and conclusion drawing processes more accurate and reliable." Note, Procedural Due Process at Judicial Sentencing for Felony, 81 Harv. L. Rev. 821, 824–825 (1967–1968). This appears in footnote 18 of the Note:

"* * * [T]his requirement (of an opportunity for cross-examination) has been deemed essential in every court and in every form of proceeding. Even for the various administrative boards created by modern statutes * * * it is common to provide (where any interest of a citizen may be affected adversely by the board's ruling) that an opportunity to hear the evidence shall be given. In short, however radically the jury-trial rules of evidence may be dispensed with, * * * this one at least remains as a fundamental of fair and intelligent investigation of disputed facts [5 Wigmore on Evidence, Third Ed., section 1940]."

II. State v. Delano, Iowa, 161 N.W.2d 66, 71–72, contains this:

"This is not to say the sentencing process is immune from scrutiny.

"Specht v. Patterson, 386 U.S. 605, 608, 87 S.Ct. 1209, 1211, 18 L.Ed.2d 326, although adhering to the pronouncement of Williams v. People of State of New York, supra, [337 U.S. 241, 69 S.Ct. 1079, 93 L. Ed. 1337] refused to extend it to a radically different fact situation.

"In Townsend v. Burke, 334 U.S. 736, 740–741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690, due process was found lacking where the sentencing judge had been furnished incorrect information in or had misread the record of prior convictions.

"In the notes appended to rule 32 as amended, Federal Rules of Criminal Procedure, 18 U.S.C.A., the Advisory Committee on rules indicated its belief Williams v. State of Oklahoma, supra, [358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516] and Williams v. People of State of New York, supra, held the due process clause of Amendment 14 does not require that sentencing court must disclose report of the presentence investigation to defendant or give him an opportunity to rebut it. However, the committee noted substantial policy arguments that the accused have an opportunity to see and refute allegations made in such reports. It expressed hope courts would make increasing use of their discretion to make such disclosures so defendants generally may be given full opportunity to rebut or explain facts in the presentence report which will be material factors in determining sentences.

"In this connection see also A.L.I. Model Penal Code, proposed official draft, section 7.07(5) which provides:

" 'Before imposing sentence, the Court shall advise the defendant or his counsel of the factual contents and the conclusions of any presentence investigation or psychiatric examination and afford fair opportunity, if the defendants so request, to controvert them. The sources of confidential information need not, however, be disclosed.'

"* * *

"As a note of caution it has been suggested that 'Kent [(Kent v. United States) 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84] and Specht [supra], read together, seem to indicate that some form of hearing or opportunity to rebut matters in confidential reports which significantly affect important dispositional or sentencing decisions may emerge as a constitutional necessity in the not too distant future.' [Maxim N. Bach] *The Defendant's Right of Access to Presentence Reports*, * * * [4 Criminal Law Bulletin, No. 3, 160] 167."

The author of the Note, Procedural Due Process at Judicial Sentencing for Felony,

supra, 81 Harv. L. Rev at 827–828, expresses a similar caution. "However, recent decisions of the court cast doubt on the view of due process which underlies Williams [Williams v. People of State of New York, supra]. In 1963 the right to counsel guaranteed by the sixth amendment was made binding on the states through the due process clause of the fourteenth amendment; in 1967 the Court held specifically that this right applies at sentencing [Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336]. Moreover, Kent v. United States and In re Gault [387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527] suggest the willingness of the Court to re-examine the meaning of due process in proceedings traditionally characterized as discretionary."

III. The majority states at the outset, "Defendant has had counsel at all times." This is true but the vice of the sentencing was absence of a real opportunity to challenge accuracy of information on which the probation officer based his opinion.

It could hardly seem that mere presence of counsel could make the procedure consistent with due process if counsel were denied opportunity to challenge whether his opinion was based on reason, rather than emotion or arbitrary will. The furnishing of counsel and then restraining the extent of his assistance is tantamount to a denial of counsel.

"The right to representation by counsel is not a formality. It is not a grudging gesture to a ritualistic requirement. It is the essence of justice. Appointment of counsel without affording an opportunity for hearing on a 'critically important' decision is tantamount to denial of counsel." Kent v. United States, supra, 383 U.S. at 561, 86 S.Ct. at 1057, 16 L.Ed.2d at 97.

There is no irrebuttable presumption of accuracy attached to the probation officer's opinion.

IV. In Division IV of the majority we find this statement:

"Assuming, arguendo, that the court considered the recommendation, there is no in-

dication that the court abdicated its responsibility to the parole agent."

In our own cases we have stressed the desirability of basing each sentence upon the fullest possible knowledge about the prisoner's character, background and antecedent career. The quoted conclusion of the majority is not very persuasive. At the hearing on remand the extent of cross-examination should be subject to the trial court's sound discretion but to shut off this right altogether is an abuse of discretion.

I would remand for further proceedings.

RAWLINGS and BECKER, JJ., join in this dissent.