## THE STATE v. SULLIVAN.

1. **Criminal Law**: SELF-DEFENSE: PRIOR RELATIONS. Whatever may have been the previous relations between one accused of murder and the deceased, if the deceased did not by his acts or by weapons threaten peril to the accused, the latter was not authorized to infer danger to himself on account of ill-will or prior conduct.

2. ———: THREATS. Evidence of previous threats made by the accused against the deceased were admissible upon the trial of one indicted for murder.

3. ———: EVIDENCE: DYING DECLARATIONS. It is competent to show by parol what were the dying declarations of the deceased, when such declarations, although reduced to writing, were not read over to nor signed by the deceased, notwithstanding the absence of the writing is not accounted for.

4. ———: ———. Nor was it competent to prove that deceased, months before the homicide, had set his dogs upon the wife and daughters of the accused.

*Appeal from Webster District Court.*

SATURDAY, APRIL 26.

THE defendant, upon an indictment for the murder of Philip McGuire, was convicted of manslaughter, and sentenced to confinement in the penitentiary for eight years. He brings the case on appeal to this court.

*J. A. O. Yeoman,* for appellant.

*J. F. McJunkin, Attorney General,* for the State.

BECK, CH. J.—I. The homicide in this case, like a very large proportion of crimes of the same character which are before the court, may be very clearly traced to the intoxicated condition of one or both of the parties. The deceased, according to the testimony, at the time he received the wound from the hand of the defendant, and for some time before, during which there had been quarrels between the parties, was un-

questionably drunk. Defendant was also under the influence of intoxicating liquors, but not to such an extent that his condition would be so readily remarked. The parties had met a short time before the homicide, in a saloon, when a quarrel arose, growing out of old difficulties, and the deceased endeavored to press defendant into a conflict, and, indeed, laid hands upon him. They were separated, and afterward met at another saloon, when the quarrel was renewed, and deceased again laid hands on defendant. They were again separated, and the deceased was, by persons present, put out of the front door. The defendant remained in the saloon until deceased returned. Thereupon defendant went immediately into the back room adjoining the saloon, followed by the deceased, who returned almost instantly with a fatal wound in his bowels. No one witnessed the stabbing. The evidence shows that the parties were neighbors, and had, before this, frequent quarrels and affrays, and we infer that deceased was usually the aggressor. Certain it is that in the quarrels and affrays immediately preceding the stabbing the deceased was the aggressor, and defendant showed a disposition to avoid a conflict. The parties were not armed, and the fatal stab was inflicted with a common pocket-knife. The evidence shows that the deceased possessed superior strength, which was well known to defendant.

II. The defendant, in justification of the homicide, insisted, upon the trial in the court below, that he acted in defense of his own person against the assault of deceased. The law upon the subject of self-defense was laid down in the instructions given to the jury with correctness and reasonable clearness.

We will notice the objections made by counsel to the instructions with the particularity they merit.

III. The tenth instruction announces the familiar rule that a man is presumed to intend the necessary consequences of his own act, and then proceeds in the following language: "And when a man assaults another with, or uses upon another,

a deadly weapon in such a manner that the natural, ordinary and probable result of the use of such deadly weapon in such manner would be to take life, the law presumes that such person so assaulting intended to take life." Counsel thinks the instruction is not applicable to the case for the reason that defendant used the deadly weapon. This is the very reason the instruction is applicable. It was important for the jury to determine the intent with which defendant used the weapon to aid them in this inquiry. The instruction was properly given. The facts are unlike those in *State v. Benham*, 23 Iowa, 154 (163), cited by counsel.

IV. The eleventh instruction is as follows:

"11. Where one person assaults another, such person so assaulted has a lawful right to use a sufficient amount of

1. CRIMINAL law: self-de- fense: prior relations.

force to resist such assault, and compel the person so assaulting to desist therefrom. But where one person is assaulted by another it is not lawful for the person so assaulted to use a deadly weapon in his defense, unless such an assault was made with such a weapon, or in such a manner, as would cause a person of ordinary courage and prudence to believe that he was in imminent peril of losing his life, or of receiving enormous bodily injury."

It is insisted that this instruction should have been so modified that the jury would have been required to consider the circumstances surrounding defendant, and his situation, as well as his knowledge of previous occurrences and the ill-will of defendant, to determine whether, in the exercise of ordinary courage or prudence, he was authorized to believe he was in imminent peril of life or great bodily injury. It is very plain that ordinary prudence cannot be exercised without regarding the condition and surrounding circumstances of the party called upon to act. These things must be considered from very necessity, and the jury could not understand the instruction differently. But ill-will of deceased, and former quarrels and affrays, could have nothing whatever to do with

defendant's peril.  However hostile deceased may have been, and however many quarrels and affrays the parties may have had, if deceased, by his acts and arms, did not threaten peril to defendant he would not be authorized by the law to infer peril on account of ill-will or prior contests.  These remarks are applicable to like objections made to the fourteenth instruction.

V.  In the twelfth instruction the court announced the rule that if defendant was so assaulted as to be in imminent peril of life or great bodily injury, as it would appear to a person of ordinary courage and prudence, and had no means of escape, he was justified in taking the life of his assailant. Counsel insist that the instruction is erroneous in that it fails to present this thought: if means of escape existed, and yet "could not reasonably have been known"—that it would not have been known under the circumstances to a man of ordinary reason and intelligence—defendant would have been justified in taking the life of his assailant.  We doubt not that the rule here presented is correct.  But in our opinion it is presented in the fourteenth instruction, which in substance directs the jury that they must determine whether the defendant, as an ordinarily prudent and cautious man, had reason to apprehend loss of life or great bodily harm.  If ignorant of means of escape which really existed, ordinary prudence and caution would lead the defendant to believe honestly that he was in peril from a deadly assault.  The jury, in determining whether he struck the fatal blow believing he was in peril, would inquire whether means of escape were known to him.

The instructions refused, so far as correct, present substantially the same rules as those given.

VI.  A witness testified that he was a justice of the peace, and that defendant had been arrested and recognized to keep the peace toward McGuire and his family, as we understand the record.  The witness also testified to threats made at the time against McGuire.  It is insisted that the testimony of this witness is incompetent.  So far as

2. ——: threats.

the evidence related to the threats it was surely admissible to show the defendant's feelings and disposition toward the deceased. Whatever the witness said in regard to the arrest and proceedings against defendant, it was, we think, proper to identify the time and explain the circumstances under which the threats were made. Other evidences of threats made by defendant at the same time were correctly admitted in evidence.

VII. Numerous objections are made in the assignment of errors to the admission of testimony, which are presented in argument. We have given them careful consideration, and are of the opinion they are not well taken. Those that are discussed by counsel we will separately notice.

VIII. The officer who, upon the commitment of defendant, took him to jail testified to certain conversations had with him relating to the homicide. The defendant offered to show, by the witness, that defendant was ironed and harshly treated by the officer. The evidence was, we think, correctly rejected. It was not claimed that the treatment had any influence upon the conversation, or was the cause of it.

IX. Two witnesses testified to the dying declarations of deceased, and one of them, it was shown, reduced the declarations to writing, but they were not read to nor signed by the deceased. It is, as we understand counsel, claimed that the testimony of the witnesses should not have been received for the reason that the absence of the writing was not accounted for. This would have been correct if the writing had been signed by deceased, or, probably, read to and pronounced by him correct. It was, however, a mere memorandum made by the witness. See *State v. Tweedy*, 11 Iowa, 350.

3. ——: evidence: dying declarations.

X. A witness was asked to repeat what the deceased said a short time before the stabbing. The record does not show what language deceased used which it was proposed to prove. But the court held a threat, if brought to the knowledge of defendant, would be competent, and sustained an objection

to the question.  The view of the law expressed by the court is correct.  It was not proposed to show that the conversation, whatever it may have been, was had in the presence of the defendant, or was communicated to him.  He could not, therefore, have been influenced by it.

XI.  Defendant proposed to show threats made by the wife of deceased, and that an assault was made upon defendant by her.  The evidence was properly excluded.  We are unable to discover any grounds upon which the evidence can be held competent.

XII.  It was also proposed by defendent to show that deceased, a few months before the homicide, set his dogs upon defendant's wife and daughters.  The evidence was excluded.  It is claimed to be competent, for the reason that it would tend to show the desperation of the deceased, and was ground for fear of great violence entertained by defendant.  We think the evidence is not competent.  The act of deceased proposed to be established would not tend to show that defendant had cause to fear the result of a personal contest with him.  For the same reasons evidence of threats by deceased made in prior quarrels with defendant, and of his conversations and conflicts with others, was incompetent.

XIII.  The only defense relied upon by defendant is that the killing was in self-defense.  We think it is not supported by the testimony.  The jury were justified in finding that defendant had no reasonable ground to fear for his life, or that he would suffer great bodily injury.  The deceased was unarmed and very drunk.  The defendant had reason to believe that his friends or those who were present would interfere, for they had done so before.  Defendant had no reasonable cause to leave the saloon when deceased returned.  There is no evidence to authorize the conclusion that the deceased, when he followed defendant into the adjoining room, inflicted violence upon defendant.  He bore no marks indi-

cating violence, and no witness testifies that blows were heard during the brief time the parties were out of view.

XIV.   The sentence of the court imposes upon defendant the extreme penalty prescribed by the statute for manslaughter, of which defendant was found guilty.   We think the punishment too severe.   The crime of defendant is not of the highest aggravation.   He was pursued by deceased and his provocation was great.   The knife with which the wound was inflicted upon the deceased was not carried as a weapon, and we cannot presume that defendant used it with the purpose of taking life.   In view of these facts, and other facts in the case, we are of the opinion that confinement for three years is a punishment commensurate with the crime.   The judgment of the District Court is so modified that the term of defendant's imprisonment shall be reduced to three years.

MODIFIED AND AFFIRMED.