STATE OF IOWA v. FRANK DILLINGHAM, Appellant.

**Murder:** MALICE: SUBMISSION OF ISSUES: EVIDENCE. A piece of gas
1 pipe used in such a manner as likely to produce death, is a deadly
weapon, and unless such use is found to be justifiable, will fur-
nish sufficient evidence of malice aforethought, deliberation and
premeditation to warrant a submission of the questions of murder
in the first and second degrees and manslaughter. Evidence held
to authorize submission of the three degrees of homicide.

**Assault with deadly weapon:** PRESUMPTION OF INTENT TO CAUSE
2 DEATH. Where an assault is made with a deadly weapon, in such
manner as likely to cause death, it will be presumed that such a
result was intended.

**Manslaughter:** INSTRUCTIONS. Where the court on a prosecution for
3 murder has defined both manslaughter and intent, it is doubtful
if any attempted definition of assault with intent to commit man-
slaughter, would aid the jury.

**Self-defense:** INSTRUCTION. Where there is evidence that a deceased
4 had made serious threats against defendant, just prior to the
killing, and defendant stated that he struck deceased when as-
saulted by him, there was no error in instructing the jury on the
subject of self-defense.

**Manslaughter:** SENTENCE. Upon a conviction for an assault with
5 intent to commit manslaughter, a sentence for the maximum
term provided by the Indeterminate Sentence law is proper.

*Appeal from Carroll District Court.*—HON. Z. A. CHURCH,
Judge.

THURSDAY, JULY 1, 1909.

THE defendant appeals from a conviction of assault with intent to commit manslaughter.—*Affirmed.*

*B. I. Salinger* and *L. H. Salinger,* for appellant.

*H. W. Byers,* Attorney General, and *Chas. W. Lyon,* Assistant Attorney General, for the State.

SHERWIN, J.—The defendant was convicted of assault with intent to commit manslaughter on an indictment charging him with murder in the first degree. The court instructed on murder in the first and second degrees, and on manslaughter, and submitted the questions to the jury for its determination.

The appellant says there was error in directing the jury to consider the charge of murder in either degree and error in directing it to consider the crime of manslaughter.

1. MURDER: malice: submission of issues: evidence.
These objections may be disposed of without extended argument, and with a recital of some of the evidence which in our judgment justifies the instructions complained of. The defendant and the deceased were brothers. They were together in a saloon at about seven o'clock in the morning of the day in question, at which time the deceased made serious threats against the defendant, to which the defendant made no answer. Soon thereafter the defendant left the saloon and went to the hotel where he was employed. About half past eight o'clock the deceased was seen to enter the basement of the hotel, and not long thereafter the defendant came from the same basement and told the manager of the hotel that he and his brother had had trouble in the boiler room of the basement, and that it would be well for the manager to get his brother away from there. The manager went to the basement and found the brother washing the blood from his face and head. Very soon after that, Joe, the brother, came from the

basement, and within a short time was seen going to the stockyards of the railroad company, where he was found dead a few hours after. When he was found, there was a fracture of his skull about seven inches long and five other serious wounds thereon; the fracture and the other wounds all appearing to have been made with a blunt instrument. The defendant stated to several persons that he had had trouble with his brother in the hotel. He stated that the deceased went into the boiler room while he was poking the fire, and that, when he laid the poker down, the deceased picked it up and struck him on the wrist with it, and that his brother also cut his fingers with a knife. To some of the witnesses the defendant stated that, when his brother assaulted him, he picked up a piece of gas pipe and knocked his brother down, that he knocked him down three times, and that each time he would get up he would knock him down again. There can be no serious doubt that the wounds on the head of the deceased caused his death, nor that such wounds were inflicted by the defendant with a piece of gas pipe in the boiler room at the time in question. The testimony shows that there were pieces of gas pipe in a room adjoining the boiler room before and after the quarrel; but the only evidence tending to show that the piece of pipe used by the defendant was in the boiler room and at hand when he was assaulted by his brother is his own statement that he "picked it up." The wound on the back of his hand, which he said was made with a knife, was slight and superficial, and the wound said to have been made with the poker was of no consequence. That the gas pipe used by the defendant was a deadly weapon can not be questioned. Its use under the circumstances shown, and in the manner shown, unless found to be justifiable, furnished sufficient evidence of malice aforethought, deliberation and premeditation, to warrant the instructions complained of. : *State v. Fuller,* 125 Iowa, 212; *State v. McPherson,* 114 Iowa, 492; *State v. Sale,* 119 Iowa, 1.

Where an assault with a deadly weapon is made in

**2. Assault with deadly weapon: presumption of intent to cause death.** such a manner that the ordinary and probable result will be to cause death, the law presumes that such a result was intended. *State v. Sullivan,* 51 Iowa, 142; *State v. Hockett,* 70 Iowa, 442.

The court defined the crime of manslaughter, but gave no definition of the crime of assault with intent to commit manslaughter. The appellant suggests the point in his

**3. Manslaughter: instructions.** brief; but in argument he does no more than to claim that the proof does not sustain the verdict found. There is in our judgment ample evidence to support a verdict of manslaughter and to show that there was an intent to kill. Manslaughter and intent both being defined, it is doubtful whether an instruction attempting a definition of assault with intent to commit manslaughter would have aided the jury.

A proper instruction on the subject of self-defense was given, and we do not think it was so obscured and confused by other language used in the same instruction and elsewhere in the charge as to mislead

**4. Self-defense: instructions.** the jury. Nor was it error to give an instruction on self-defense. If the court had directed a verdict for the defendant on that ground, it would have been error. The defendant's statements to the different witnesses for the state as to what took place between his brother and himself in the boiler room did not conclusively show self-defense. Nor was the jury bound to so consider such statments to the exclusion of all other facts and circumstances bearing upon the question.

The court's instructions as to the weight to be given admissions said to have been made by the defendant were entirely proper. The alleged admissions were by no means all in his favor. The examination of Miss Barnes did not go beyond due bounds.

There was no error in sentencing the defendant for
the maximum term provided by Code, sec-
tion 4772. It is required by chapter 192,
Acts 32d General Assembly, 1907. We find
no reason for disturbing the judgment in this case. It is
therefore *affirmed.*

5. MAN-
SLAUGHTER:
sentence.