**STATE of Iowa, Appellee,**

v.

**Michael Lawrence HARVEY, Appellant.**

**No. 57992.**

Supreme Court of Iowa.

Dec. 17, 1975.

James M. Sullivan, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., William D. Scherle, Asst. Atty. Gen., and Ray A. Fenton, Polk County Atty., for appellee.

Heard before MOORE, C. J., and LeGRAND, REES, REYNOLDSON and McCORMICK, JJ.

LeGRAND, Justice.

Defendant entered a plea of guilty to the offense of robbery as defined in § 711.1, The Code. He was sentenced to serve a term of not more than 10 years in the Men's Reformatory at Anamosa, as provided in § 711.3. This is the judgment from which he appeals.

The sole question presented is whether the trial court abused its discretion in imposing a penitentiary sentence upon defendant.

Prior to sentence, the trial court received a presentence report which recommended defendant be sent to the Ft. Des Moines Men's Residential Facility under supervision. There was also before the court at the time of sentencing a report from the Iowa Security Medical Facility suggesting defendant be given probation.

Nevertheless, the trial court determined defendant should serve the term heretofore described. In doing so, the court made these observations:

"I might say that I have received a presentence investigation and given it careful consideration. I have listened to what [your attorney] has said and find very little in that that I disagree with,

with the exception as what ought to be done * * * Ft. Des Moines is [a place] of very little restraint. * * * They're given some guidance and some counseling, but the responsibility is their own, and there are no doors that are locked to the place and it's not barred, and everybody is expected to pick out a program out of what is available that fits their needs, and then nobody is forced in any particular program, and I'm afraid that you're just not ready for that sort of choice yet, and I'm going to sentence you to Anamosa but not with the idea that you're going down there and do ten years. They have the same program as Ft. Des Moines does except that it starts with more strict rules and structure and then you work yourself out into a halfway house situation and then probation. * * * [Y]ou'll have a chance to decide for yourself, I guess, whether you're going to spend the rest of your life in institutions or not. I think Anamosa Reformatory would be a good place for you to begin introducing some structure into your life, * * * and it's not with any thought of being mean or cruel or punishing you that I'm picking this choice. I think with all the opportunities that are open, that are available, it's the thing that will benefit you most. I agree with [your attorney], I don't think you're a menace to this community or you'd be a person who couldn't live here, but I think that you are going to have to start structuring your life and I think this is the first good step for you, to go down there and make a good record so that soon you'll be out and gradually work yourself back into the community."

What is a right sentence is frequently a difficult choice to be made originally by the trial court within the limited alternatives permitted by statute. We interfere only if there is an abuse of discretion in making that choice. *See State v. Horton*, 231 N.W.2d 36, 39 (Iowa 1975); *State v. Warner*, 229 N.W.2d 776, 783 (Iowa 1975); *State v. Stakenburg*, 215 N.W.2d 265, 267 (Iowa 1974); *State v. Davis*, 195 N.W.2d 677, 678 (Iowa 1972). No such abuse appears here.

Defendant urges upon us the adoption of the ABA Standards, Appellate Review of Sentences, § 2.3(c), concerning sentencing, as espoused in the concurring opinion in *State v. Horton, supra*, 231 N.W.2d at 40–42. In *State v. Peckenschneider*, 236 N.W.2d 344 (Iowa 1975), filed contemporaneously with our opinion in the present case, we refused to do so. However, even if we acceded to defendant's suggestion, we could not set his sentence aside.

The trial judge considered the possibilities open to him and rejected them for reasons fully explained in the record. This is substantially what the ABA Standards would dictate in every case. While some may disagree with his conclusions, we find he was not insensitive to factors involved; that he explained the considerations which impelled his decision; and that his rationale was both valid and persuasive.

The sentence was within the limits of sound trial court discretion, and the judgment is

Affirmed.

MOORE, C. J., and REES, J., concur.

McCORMICK and REYNOLDSON, JJ., concur specially.

McCORMICK, Justice (concurring specially).

I agree that the trial judge gave a reasoned sentence within the range of his discretion in the present case.

I. Our review is made considerably easier because he complied with ABA Standards, Appellate Review of Sentences, § 2.3(c) (Approved Draft 1968). This illustrates that some sentencing judges do recognize the desirability of giving their reasons for sentences. Four highly salutary purposes are served. The reasonableness of the sentence is demonstrated; the defend-

ant knows why he received the particular sentence; this court on review knows why it was selected; and corrections authorities are given the benefit of the judge's thinking. *State v. Horton*, 231 N.W.2d 36, 41 (Iowa 1975) (special concurrence). See, generally, Korbakes, *Criminal Sentencing: Should the "judge's sound discretion" be explained?*, 59 Judicature 185 (November 1975); Kaufman, *The Sentencing Process and Judicial Inscrutability*, 49 St. John's L.Rev. 215 (1975).

This case emphasizes that our review is more meaningful, and considerably more confident, when we know why the sentence was chosen. We need not take refuge here behind the principle that when the record does not show why the sentence was selected we will nevertheless presume the sentencing judge had a good reason for it. This presumption has been discredited by the frequency of cases in which judges have given reasons for their sentences and they include an unlawful reason. *State v. Drake*, 224 N.W.2d 476 (Iowa 1974); *State v. Jackson*, 204 N.W.2d 915 (Iowa 1973); *State v. Milliken*, 204 N.W.2d 594 (Iowa 1973); *State v. Boston*, 233 Iowa 1249, 11 N.W.2d 407 (1943).

We should commend the example set by the sentencing judge in this case to other judges by adoption of the standard followed here, ABA Standards, Appellate Review of Sentences, § 2.3(c), *supra*.

II. The record shows the sentencing judge also complied with the other applicable ABA sentencing standards. He selected a sentence which he concluded would provide "the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant." ABA Standards, Standards Relating to Sentencing Alternatives and Procedures, § 2.2 (Approved Draft 1968). In so doing, he made full and appropriate use of the presentence report. See §§ 789A.3–789A.5, The Code.

After consideration of all factors bearing on the sentencing decision, he concluded the defendant "is in need of correctional treatment which can most effectively be provided if he is placed in total confinement." ABA Standards, Standards Relating to Sentencing Alternatives and Procedures, § 2.5(c). See also ABA Standards, Standards Relating to Probation, § 1.3 (Approved Draft 1970).

While all, especially including the defendant, might not share the judge's optimism regarding the rehabilitative prospects of imprisonment in this case, it seems clear the sentencing decision was within the range of fair discretion under these standards.

Our refusal to adopt these standards as mandatory criteria to be applied in sentencing permits perpetuation of the inequities, disparities, and unfairness which have led to substantial justified criticism of sentencing practices. Coburn, *Disparity in Sentences and Appellate Review of Sentencing*, 25 Rutgers L.Rev. 207 (1971); Frankel, *Lawlessness in Sentencing*, 41 U.Cin.L.Rev. 1 (1972); Mueller, *Penology on Appeal: Appellate Review of Legal but Excessive Sentences*, 15 Vand.L.Rev. 671 (1962). The standards do not require trial judges to do anything more than they should already be doing in the sentencing process, and their use would make it possible for us to do more than give lip service to the principle of appellate review of criminal sentences. Their adoption would be a positive step toward elimination of injustice in sentencing. See dissenting opinion in *State v. Peckenschneider*, 236 N.W.2d 344 (Iowa 1975), filed separately today.

I would adopt the ABA Standards advocated by counsel for the defendant in this case.

REYNOLDSON, J., joins in this special concurrence.