**STATE of Iowa, Appellee,**

v.

**Donald PECKENSCHNEIDER, Appellant.**

**No. 58299.**

Supreme Court of Iowa.

Dec. 17, 1975.

John J. Carlin, Carlin & Darbyshire, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Thomas Mann, Jr., Asst. Atty. Gen., Edward N. Wehr, County Atty., and A. Fred Berger, Jr., Asst. County Atty., for appellee.

HARRIS, Justice.

This appeal challenges the propriety of the trial court's refusal to grant probation under § 789A.1(2), The Code. We affirm.

Donald Peckenschneider (defendant) entered a guilty plea to a charge of receiving stolen goods in violation of § 712.1, The Code. There is no claim the proceedings did not comply with the rules laid down in *State v. Sisco,* 169 N.W.2d 542 (Iowa 1969) and *Brainard v. State,* 222 N.W.2d 711 (Iowa 1974). Defendant limits his challenge to the trial court's refusal to grant what is commonly called a "bench parole." Section 789A.1(2) provides in material part: "By record entry at time of or after sentencing, the court may suspend the sentence and place the defendant on probation upon such terms and conditions as it may require."

The record would have supported the grant of probation if the trial court had so chosen. In accordance with a plea bargain the county attorney did not oppose defendant's request. Probation was recommended in a presentence investigation report prepared and submitted at the trial court's request by the Iowa Bureau of Adult Correction Services.

The recommendation was based on a careful study of defendant by the bureau's parole agent. The State in no way disputes the facts outlined in the report and the trial court seems to have taken them as true. Defendant was 52 years old and married.

His two daughters were 12 and 8 years of age. The family lived in the rural community of Donahue, Iowa, where they owned their own home.

Defendant's background was entirely rural. He had been self-employed during most of his life. From 1966 to February of 1975 he operated a tavern and restaurant in Donahue. The parole agent concluded:

"The present offense represents a radical departure from a lifetime which could be considered as exemplary until now. It must be assumed that, under the forces which operate in and around pool halls and like recreational facilities, the opportunities, and the temptations, for criminal activity can overcome a person's sense of fitness and propriety developed over long periods of self-discipline.

"This appears the only logical explanation for a sudden reversal of pattern evident in this case. Mr. Peckenschneider is quite remorseful, mainly because of the ugly stain on an otherwise bright shield. It is the opinion of this writer, following the interview, that Mr. Peckenschneider will suffer more in his own conscience than he would from any formalized penalty, and the chances for a recurrence should be completely nil.

"* * *

"It is recommended that this man be granted probation."

The trial court expressed only one reason for determining to decline the recommendation for probation. The sole expressed reason was to deter thefts in the community. The record discloses the following:

"THE COURT: I pondered over this thing for a long time, and if we didn't have receivers, we wouldn't have so many break-ins. We are having an epidemic of break-ins in this town, as Mr. Berger will verify. Is that right?

"MR. BERGER [Prosecutor]: Yes, there is a rash of crime going on that is unprecedented in this community.

"THE COURT: And these fellows wouldn't be breaking into homes and stores if they couldn't find a person to buy these things. Mr. Peckenschneider was fully aware of that, and at the time he pled guilty, I forewarned Mr. Peckenschneider that if he was pleading guilty in the hopes of getting a parole from me, that he shouldn't plead guilty. Do you remember that, Mr. Peckenschneider?

"[DEFENDANT]: I don't know if those were your exact words.

"THE COURT: I cannot condone this thing, because we are having an epidemic of break-ins, and they wouldn't be breaking in if they couldn't sell the things they stole, and we have got to put a stop to it in this town. If I condone it, there will be more break-ins. And therefore, I refuse to give you a parole at this time. * * *."

The record did not bear out the trial court's claim to have forewarned defendant he should not plead guilty in the hope of obtaining a parole.

Defendant's challenge is twofold. He asks us to repudiate our established scope of review in criminal sentences and adopt the ABA Standards of Appellate Review of Sentencing. In the alternative defendant argues the trial court's refusal to grant probation was an abuse of discretion.

I. It should first be conceded one might well question the validity of positing a probation question within the ambit of sentencing. Sentencing and probation are elsewhere thought to be distinct concepts. It is generally held denial of probation is not appealable, at least in the absence of statute. 24 C.J.S. Criminal Law § 1656, pp. 1019–1020.

Our own review of criminal sentences proceeds from an Iowa statute which we have interpreted to govern our reviews both of sentence and of probation. Section 793.-18, The Code, provides:

"If the appeal is taken by the defendant, the supreme court must examine the record, without regard to technical errors or de-

fects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands; it may affirm, reverse, or modify the judgment, or render such judgment as the district court should have done, or order a new trial, or reduce the punishment, but cannot increase it."

Because the mandate of § 793.18 directs our review to *judgment* and not merely *sentence,* we review the trial court's denial of probation. The scope of our review was described in *State v. Cole,* 168 N.W.2d 37 (Iowa 1969). We said:

"What is commonly called a 'bench parole' is authorized by [section 789A.1(2), The Code]. This section to the extent applicable here provides: 'The trial court * * * may * * * suspend the sentence and grant probation to said person during good behavior. * * *.' [Section 789A.7] provides for the custody, care and supervision of the person to whom probation is granted by a parole agent or agency designated by the court.

"Section [789A.1(2)] says the court 'may' suspend sentence. The granting of a suspended sentence and parole is a matter of grace, favor, or forbearance. It is not a matter of right. (Authorities).

" * * * Trial courts have broad discretion in the granting or withholding of bench paroles and an appellate court will seldom interfere with their determination of such matters. There is, however, a duty to consider and determine an application for parole. *State v. Boston,* 233 Iowa 1249, 11 N.W.2d 407. See also second appeal in the same case, 234 Iowa 1047, 14 N.W.2d 676.

"* * *

"From these pronouncements it is clear that a trial court has a duty to hear an application for parole but has wide discretion in what must be considered in granting or denying the application." 168 N.W.2d at 39–40. See also *State v. DeVan,* 205 N.W.2d 699, 700 (Iowa 1973).

The provisions of § 793.18, The Code, which allow us to reduce a sentence imposed by a trial court were adopted in 1860. Iowa seems to have been the first state to allow appellate review of legally valid sentences challenged on appeal as being excessive. Mueller, Penology on Appeal: Appellate Review of Legal but Excessive Sentences, 15 Vand.L.Rev. 671 (1962).

Actions of a judge pronouncing sentence were of considerably more importance to a convicted criminal prior to 1907 when our indeterminate sentence law was enacted. Acts of the 32nd G.A., 1907 Regular Session, ch. 192, § 9, now § 789.13, The Code. Even so we exercised our power to reduce sentences sparingly. During the 47 year period from 1860 to 1907 we reduced sentences in only a handful of cases. *The State of Iowa v. Madden,* 35 Iowa 511 (1872); *The State v. Hayden,* 45 Iowa 11, 18 (1876); *The State v. Thompson,* 46 Iowa 699, 700 (1877); *The State v. Doering,* 48 Iowa 650, 652 (1878); *The State v. Moody,* 50 Iowa 443, 446 (1879); *The State v. Sullivan,* 51 Iowa 142, 148, 50 N.W. 572, 574 (1879); *The State v. Fields,* 70 Iowa 196, 198, 30 N.W. 480, 481 (1886).

Our scope of review as developed accommodates the purpose and effect of the indeterminate sentence law. In 1907 (except for the crimes excluded in § 789.13, The Code) the responsibility of determining the length of a prison sentence was shifted from the trial court to the board of parole. *State v. Cupples,* 260 Iowa 1192, 1196, 152 N.W.2d 277, 279 (1967) and authorities. It remains for the trial court to determine for most felonies, including receiving stolen goods under § 712.1, The Code, whether the convicted person receives an indeterminate prison sentence or jail sentence or fine or some combination of such punishments. Section 789.15, The Code. Under § 793.18, The Code, we have retained authority to reduce the punishment thus imposed but not to determine the length to be served under an indeterminate sentence.

▆ In a long line of cases we have consistently said the determination of whether to sentence a defendant to jail or assess a fine rather than sentencing him to imprisonment in the penitentiary is addressed to the sound discretion of the trial court. *State v. Jennings*, 219 N.W.2d 1, 1–2 (Iowa 1974); *State v. DeVan*, 205 N.W.2d 699, 700 (Iowa 1973). These cases also note the trial court has similar discretion on the question of probation.

▆ We have demonstrated a growing reluctance to interfere with the trial court's discretion. The reason for that reluctance is apparent. The statutory scheme outlined in the indeterminate sentence act is complemented by specific powers given the parole board. Under § 247.5, The Code, power is given the board of parole to determine whether a parole should be granted any inmate, other than those serving life terms. Under § 247.7, The Code, the board of parole may, upon recommendation of the trial judge and prosecuting attorney, grant parole prior to commitment.

We pass the serious question of whether the ABA Standards of Appellate Review of Sentencing in fact contemplate a review of a denial of probation. We decline to adopt the standards. Our review, as developed under § 793.18, The Code, is sufficient, especially in view of the indeterminate sentence act.

Defendant's first assignment is without merit.

▆ II. A much more difficult question is presented under defendant's second assignment, the claim the trial court abused its discretion in failing to grant probation. Defendant argues that because the trial court mentioned only the deterrent effect of his declination of probation we must assume he ignored all other criteria.

Other criteria for such a determination are listed in § 789A.1, The Code. They include opportunity for rehabilitation of the defendant, the protection of the community from further offenses by the defendant and others, the age of the defendant, his prior record of convictions, his employment circumstances, his family circumstances, the nature of the offense committed, whether a dangerous weapon or force was used in the commission of the offense, and such other factors as are appropriate.

It is not clear from the remarks of the trial court that he was prompted to his denial solely in the hope his act would deter others in the community from committing crime. His remarks may have indicated this hope was the decisive reason rather than, as defendant suggests, the exclusive reason for his denial. While the record is certainly not strong it cannot be said there were no other factors for the trial court to consider. For example other charges against defendant were dismissed. On review we believe the case falls within the scope of the trial court's discretion.

This is not to imply it would be inappropriate for the board of parole to grant defendant a parole before commitment or a parole at the earliest time after commitment under the statutory authority mentioned in the preceding division. Defendant appears to be an excellent parole risk. But, under our statutory scheme, it is for the parole board and not for us to act.

Affirmed.

MOORE, LeGRAND, REES and UHLENHOPP, JJ., concur.

McCORMICK, MASON, RAWLINGS and REYNOLDSON, JJ., dissent.

McCORMICK, Justice (dissenting).

I believe defendant's sentence resulted from an abuse of trial court discretion. In addition, I would adopt prospectively a number of ABA standards relating to the exercise of sentencing discretion.

I. Once again the court is confronted with a defendant's challenge of his sentence in a criminal case. Once again the majority opinion notes our statutory obligation to determine if the sentence is too severe. § 793.18, The Code. And, once again having determined that the sentence is among

the statutory alternatives available to the sentencing judge, the majority has somewhat reluctantly refused to interfere. I believe the time has come for us to recognize our obligation to accord meaningful review to judgments in criminal cases.

Concurring specially in *State v. Horton,* 231 N.W.2d 36, 40 (Iowa 1975), I tried to emphasize the hollowness of present compliance with our mandate to review criminal sentences:

> "The most important responsibility of a trial judge in a criminal case is his duty to pronounce sentence after a defendant's conviction. No other power of the judge has such a potentially devastating effect on the lives of the defendant and his family. No other power so affects the public interest.

> "It is an anomaly that the exercise of this power, among the greatest that one person may exercise over the life of another, is virtually unreviewable. We have made it so. If the sentence does not exceed the maximum provided in the applicable statute, we will not interfere unless the record affirmatively demonstrates the sentence resulted from an abuse of the judge's discretion. *State v. Stakenburg,* 215 N.W.2d 265, 267 (Iowa 1974). When the record is silent we presume the sentence is grounded upon proper reasons."

In that case three members of the court advocated adoption of a requirement that sentencing judges be required to state their reasons for selection of a sentence on the record so this court would have something to review if the sentence were later challenged. See ABA Standards, Appellate Review of Sentences, § 2.3(c) (Approved Draft 1968); ABA Standards, Sentencing Alternatives and Procedures, § 5.6(ii) (Approved Draft 1968).

Arguments for that principle were outlined in the *Horton* special concurrence and will not be repeated here. However, I adhere to those views. Compliance with that principle would have made our task easier and much more confident here. As it is, the majority takes refuge behind what it finds is an ambiguous record and resorts again to the presumption that the sentencing judge must have had good reasons for the sentence because the record fails to show he definitely did not.

II. Applicable statutes and our cases have established standards which govern trial court discretion in selecting a sentence, although we have neither consistently recognized nor applied them.

Since 1860 this court has been obliged to accord appellate review to criminal judgments by examining the record "without regard to technical errors or defects which do not affect the substantial rights of the parties" and to "render such judgment on the record as the law demands." We may "affirm, reverse, or modify the judgment, or render such judgment as the district court should have done, or order a new trial, or reduce the punishment, but cannot increase it." § 793.18, The Code. In 1860 the Code also contained standards governing criminal sentences. §§ 4875–4877, Revision of 1860. Aggravating and mitigating circumstances were defined in an effort to guide trial court sentencing discretion. Obviously, they were also intended to guide this court in its review of sentences.

The present Code also provides certain sentencing standards. A defendant may be granted either deferred judgment or bench probation under § 789A.1, The Code. In deciding between these options, the sentencing court must first "determine which of them will provide maximum opportunity for the rehabilitation of the defendant and protection of the community from further offenses by the defendant and others." A logical implication of this provision is that the same principle should govern the choice between incarceration and probation.[1]

In addition, § 789A.1 provides:

1. This principle is explicit in S.F. 85, ch. 3, § 106, part of Iowa's revision of its criminal law, First Session 66 G.A., as adopted in the Iowa Senate.

"In making this determination the court shall consider the age of the defendant, his prior record of convictions, if any, his employment circumstances, his family circumstances, the nature of the offense committed, whether a dangerous weapon or force was used in the commission of such offense, and such other factors as shall be appropriate."

In a manifest effort to assure that trial judges focus upon the goal of providing maximum rehabilitation opportunity consistent with protection of the community and to assure a record for review, the statute adds:

"The court shall file a specific written statement of its reasons for and the facts supporting its decision to defer judgment or to suspend sentence and its decision on the length of probation."

The legislature has also made clear its intention that the court have available all the information bearing upon the defendant which it is required to consider before imposing any sentence. This information may come from the parties and other sources. In all felony cases a presentence investigation must be obtained. § 789A.3, The Code. The presentence investigator is required to gather detailed information about the defendant and his circumstances:

"Whenever a presentence investigation is ordered by the court, the investigator shall promptly inquire into the defendant's characteristics, family and financial circumstances, needs, and potentialities; his criminal record and social history; the circumstances of the offense; the time the defendant has been in detention; and the harm to the victim, his immediate family, and the community. All local and state mental and correctional institutions, courts, and police agencies shall furnish to the investigator on request the defendant's criminal record and other relevant information. With the approval of the court, a physical examination of the defendant may be ordered, or the defendant

may be committed to a psychiatric facility for an evaluation of his personality and mental health. The results of any such examination shall be included in the report of the investigator." § 789A.4, The Code.

The presentence report is also part of the record. § 789A.5, The Code.

These statutory provisions make it plain the legislature has marked the boundaries within which a sentencing judge's discretion may operate. Fundamental in these provisions is the concept that each defendant is to be sentenced as an individual. If he is to be locked up, it must be because that disposition is appropriate in the particular case and not because of some emotional reaction of the trial judge or preconceived determination based solely on the nature of the offense.

The overriding statutory responsibility of the sentencing judge is to select the sentencing alternative which will provide maximum opportunity for rehabilitation of the defendant while at the same time avoiding unreasonable risk to the security of the community. Cf. Symposium, *Student Commentary on Proposed Criminal Law Reform in Iowa, Judgment and Sentencing Procedures,* 60 Iowa L.Rev. 598–610 (1975). The sentence must reflect individualized justice.

Our decisions have independently set similar limits upon a sentencing judge's discretion. Included are principles that each sentence must depend upon the peculiar facts of a given case, and the trial judge has a duty to ascertain all facts which will assist in the exercise of his discretion. *State v. Cupples,* 260 Iowa 1192, 1197, 152 N.W.2d 277, 280 (1967). Above all:

"The trial court and we on review should weigh and consider all pertinent matters in determining proper sentence, including the nature of the offense, the attending circumstances, defendant's age, character and propensities and chances of

his reform. The courts owe a duty to the public as much as to defendant in determining a proper sentence. The punishment should fit both the crime and the individual." *Ibid.*

A criminal sentence must be based upon more than a knee-jerk reaction to a single factor in the entire picture; it must be based upon careful consideration and weighing of all factors.

The principle of individualized justice is emphasized in the indeterminate sentence law. § 789.13, The Code. The length of an indeterminate sentence, within the maximum fixed by statute, is determined by the parole board. The board may even grant parole prior to commitment in certain situations. § 247.7, The Code. The indeterminate sentence law was born in the concept that the main purpose of a criminal sentence is rehabilitation of the offender, and "It is intended that a parole board determine whether or not the felon must serve the maximum number of years or whether he has been 'cured' and ready to return to society." Note, 49 Iowa L.Rev. 499, 509 (1964). See Frankel, *Lawlessness in Sentencing,* 41 U.Cin.L.Rev. 1, 29 ("The basic premise of the indeterminate sentence is the modern conception that rehabilitation is the paramount goal in sentencing."). From this, it is clear the legislative scheme is inconsistent with the notion that judges may ignore the individual and sentence an offender to a period of incarceration simply to set an example to others.

In addition to the fact such a determination is contrary to legislative policy as manifested in the sentencing statutes, the indeterminate sentence law prevents this purpose from being realized. If the offender is treated as an individual by the parole board, as the indeterminate sentence law intends, he will be retained in prison only so long as necessary to correct his individual behavior and reasonably assure it will not recur. Thus, when an indeterminate sentence is involved the legislature has preempted the judicial right to order an of-fender imprisoned for the sole or primary purpose of deterring others. In these situations, the legislature has chosen to accommodate the deterrency objective by the relative severity of possible maximum sentences, a legislative determination. It has deprived the judiciary of the right to say how long an offender will stay in prison, and the parole board's prerogative to make that decision is controlled by rehabilitation objectives.

Similarly, when retribution and deterrency become overriding legislative goals, the legislature knows how to deprive the judiciary of the right to pronounce an individualized sentence. The legislature simply prescribes a mandatory prison sentence. See § 789A.1, The Code. ("However, this section shall not apply to the crimes of treason, murder, or violation of section 204.401, subsection 1 or 2 * * * .").

III. In the present case, the record unambiguously demonstrates that the sentencing judge ignored the legislative and judicial standards which mark the limits within which his sentencing discretion must operate. In affirming his judgment we compound the resulting injustice. We deprive a criminal defendant once again of meaningful appellate review. What is more, we further constrict the judicial role in the sentencing process, moving closer toward complete abandonment of the field to the legislative and executive branches.

Here, by his own admission, the trial judge had decided to send defendant to prison before even accepting his plea of guilty. He revealed this close-minded attitude in recalling, erroneously, that he had forewarned defendant of his intention not to exercise discretion in the case: " * * * I forewarned Mr. Peckenschneider that if he was pleading guilty in the hopes of getting a parole from me, that he shouldn't plead guilty." This remark shows the judge had determined to order defendant imprisoned without regard to the legislative and judicial standards governing his exercise of sentencing discretion. Defendant's

characteristics, his family situation, his employment situation, his mental and physical health, any circumstances of aggravation or mitigation surrounding the offense—none of these factors mattered.

The judge confirmed his predetermined refusal to follow these standards when he announced his reason for sending defendant to prison:

> "I cannot condone this thing, because we are having an epidemic of break-ins, and they wouldn't be breaking in if they couldn't sell the things they stole, and we have got to put a stop to it in this town. If I condone it, there will be more break-ins. And *therefore,* I refuse to give you a parole at this time * * *." (Italics added).

The majority suggests this statement may reflect the decisive but not exclusive reason for the prison sentence. I do not think the judge left any doubt about the fact that in his mind defendant had to be imprisoned to deter others, and it did not matter what the other circumstances were bearing on the sentencing decision. Even if this inference from the single statement were debatable, the judge removed all doubt when he earlier demonstrated he had decided to send defendant to prison before the court had even accepted his plea of guilty.

The circumstances here are not qualitatively different from those in *State v. Jackson,* 204 N.W.2d 915 (Iowa 1973). There the defendant was incarcerated because a group of judges had decided in advance all those who were convicted of the offense involved should be incarcerated, regardless of individual circumstances. The only factual difference is that here one judge made the same kind of decision in the case of one defendant. The result is the same. In both cases, the sentencing judges refused in advance to sentence the defendants as individuals. We condemned the practice in *Jackson* and reversed the judgment; we should do the same here. Punishment must fit the offender and not merely the crime. *Woolsey v. United States,* 478 F.2d 139, 143 (8

Cir. 1973); *United States v. Daniels,* 446 F.2d 967 (6 Cir. 1971).

Other recent cases in which we have recognized our duty to reverse when the record shows the sentence resulted from a violation of applicable sentencing standards include *State v. Drake,* 224 N.W.2d 476 (Iowa 1974), and *State v. Milliken,* 204 N.W.2d 594 (Iowa 1973).

In an early opinion this court said it would not find an abuse of trial court discretion without "some legal data upon which to base its action." *State v. Baughman,* 20 Iowa 497, 501 (1866). Correlatively, when the record presents legal data showing the sentencing judge has left the area marked by the pertinent sentencing standards, we have a duty to find an abuse of discretion. See *State v. Warner,* 229 N.W.2d 776, 783 (Iowa 1975); *State v. Boston,* 233 Iowa 1249, 11 N.W.2d 407 (1943).

I believe the sentencing judge abused his discretion by refusing to weigh all the pertinent factors in order to give the defendant a sentence based upon individualized justice in this case.

IV. The record reveals an additional basis for finding an abuse of trial court discretion. The trial judge displayed an erroneous legal view of the concept of probation. He equated a grant of probation with condoning defendant's offense. This is wrong.

In 1957 the National Council on Crime and Delinquency published its *Guides for Sentencing.* This book is the work product of some of this country's most distinguished and experienced jurists from federal, state, and local courts. They spent four years formulating concepts to assist judges in making sentencing decisions.

They had this to say about probation:

> "In common with imprisonment, the ultimate purpose of probation is the protection of society through the proper control of those persons whose behavior has brought them before the criminal courts. Probation differs from imprisonment in that it 'seeks to accomplish the rehabilitation of persons convicted of crime by

returning them to society during a period of supervision rather than sending them into the unnatural and, all too often, socially unhealthful atmosphere of prisons and reformatories.'

"The program of probation is, however, more than an alternative to the contaminating influences of imprisonment. Offering a more hopeful approach than any other disposition made by the court, probation rests foursquare upon the conviction that rehabilitation in the community is a realistic possibility. The proper use of probation, therefore, demands careful selection, since our knowledge of human behavior indicates that not every offender can be treated through probation and that some people must be isolated from society by commitment to a correctional institution.

"Probation is not granted out of a spirit of leniency. It involves placing an offender under the supervision of a probation officer for a specific period. The term 'supervision' implies continuing control by the court through the agency of its probation officer. This control is manifestly of a different character from that present in a penal institution. During the period of supervision, the officer's guidance and direction continue to be exercised and the offender remains accountable to the court for his behavior. As the Wickersham Commission said, probation is not merely 'letting the offender off easily.'" *Guides for Sentencing* supra at 13–14.

By placing probation among the alternatives available to a sentencing judge and surrounding it with the standards and criteria contained in Code chapter 789A, I believe our legislature has shown it shares this view. Probation is a substantial restriction of freedom; it is not forgiveness, and it is not an endorsement of the offense. The sentencing judge manifestly erred in holding otherwise.

The fact that the trial court equated probation with condoning the offense demon-strates that the court did not follow the legislative standards established in Code chapter 789A regarding selection of probation as a sentencing alternative. I would find an abuse of discretion on this ground also.

V. Rather than set aside defendant's sentence and remand for resentencing, I would modify defendant's sentence here under Code § 793.18. We have all the information which the trial judge had. It shows this is an appropriate case for probation.

Under Code § 789A.1, probation is appropriate in Iowa when it will "provide maximum opportunity for the rehabilitation of the defendant and protection of the community from further offenses by the defendant and others." This statute commits Iowa to the desirability of probation when those purposes will be served. Those purposes will be served by probation in this case. The advantages of probation far outweigh anything to be gained by incarceration of this defendant.

Reasons for granting probation in appropriate cases are summarized in ABA Standards, Probation, § 1.2 (Approved Draft 1970):

"Probation is a desirable disposition in appropriate cases because:

(i) it maximizes the liberty of the individual while at the same time vindicating the authority of the law and effectively protecting the public from further violations of law;

(ii) it affirmatively promotes the rehabilitation of the offender by continuing normal community contacts;

(iii) it avoids the negative and frequently stultifying effects of confinement which often severely and unnecessarily complicate the reintegration of the offender into the community;

(iv) it greatly reduces the financial costs to the public treasury of an effective correctional system;

(v) it minimizes the impact of the conviction upon innocent dependents of the offender."

In its Commentary on this standard the committee which drafted the standards discusses four advantages which accompany the use of probation. Numerous authoritative studies are cited in support of the committee's findings.

The first advantage is: "Probation often will offer far more meaningful possibilities for rehabilitation than will other sentencing alternatives, particularly in the case of first offenders. * * * Continuing normal community contacts has much to offer by way of affirmative contributions to the reintegration of the offender as a useful and non-offending citizen. * * * [T]here are * * * negative and frequently stultifying effects of confinement which can unnecessarily complicate this process of reintegration." *Id.* at 28.

The second advantage "is that probation maximizes the liberty of the individual while at the same time vindicating the authority of the law and effectively protecting the public from further violations." *Id.* at 29.

The third advantage "is the simple point of economy * * *." Probation costs one-tenth as much as imprisonment. *Ibid.*

The fourth advantage is that probation minimizes the impact of conviction upon the innocent dependents of the offender. "Imprisonment has its hidden costs, among which are the impact of removing the main source of income from a family. The effect of the criminal sanction on innocent dependents will be much less if the offender can be put on probation and can work to support his family at the same time." *Id.* at 30. The same advantage accrues to the community when the dependents are thereby kept off the welfare rolls.

Further amplification of its position in support of a presumption in favor of probation is provided by the American Bar Association in its committee Commentary to ABA Standards, Sentencing Alternatives and Procedures, § 2.3(e) at 72–73 (Approved Draft 1968). That presumption is fully applicable here.

This defendant is 52 years old, married and parent of two young daughters. He is an honorably discharged veteran of World War II. His roots in the community are deep and strong. He has always supported his family and appears devoted to it. He has no prior criminal record. This charge and the three separate charges which were dismissed all grew out of incidents which occurred during an eleven-day period. As observed by the presentence investigator, this offense "represents a radical departure from a lifetime which could be considered exemplary until now." No circumstances of aggravation surrounded the offense. The prosecutor did not oppose probation. Four reputable businessmen in the community recommended probation. Defendant expressed remorse which the presentence investigator believed to be genuine. The investigator also believed the chances of recurrence were nil.

Imprisonment of this defendant is unjustified under this record. Cf. *People v. McClendon,* 130 Ill.App.2d 852, 265 N.E.2d 207 (1970). He is an ideal candidate for probation. Incarceration in these facts could only be destructive. It would serve no useful purpose. It could do no good for this defendant, his family, or the community, and it would inevitably do considerable harm. Prison would not make defendant a better man; it could easily make him worse. It would deprive his family of its sole source of support and the companionship of a dedicated spouse and parent. The family might become dependent upon the community for support. The trip to prison would be a round trip. Upon his return from prison it is difficult to imagine defendant would be less a threat to the community than he is now. He, his family, and the community would be far better served by a two-year program of supervised probation.

Applying the principle in Code § 789A.1, I would modify the defendant's sentence to place him on bench probation.

The majority opinion seems to recognize an abuse of the sentencing power occurred in the present case but shifts responsibility for its correction to the executive branch ("it is for the parole board and not for us to act"). I think the buck should stop here.

VI. This case shows the desirability of adopting certain ABA standards to reinforce the principles inherent in our statutes and cases and to help us give meaningful review to criminal sentences. These standards would not change our principles of review; they would lend coherence and concreteness to existing standards, encourage uniformity of sentencing practices, require individualized justice, and provide a meaningful record for appellate scrutiny.

The general principle in the standards puts the general principle in our statutes and cases in concrete terms:

"2.2 General principle: judicial discretion.

The sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant." ABA Standards, Standards Relating to Sentencing Alternatives and Procedures, § 2.2 (Approved Draft 1968)

The sentencing philosophy reflected in this standard underlies our indeterminate sentence law and probation alternatives in Code § 789A.1. The thinking of our legislature and this court, as shown in our statutes and cases, is like that of the distinguished drafters of the ABA standards. Sentences which do not involve imprisonment are more likely to be effective in the vast majority of cases. See Commentary to ABA Standards, Standards Relating to Sentencing Alternatives and Procedures, supra, at 62–63 and 72–73.

I would also adopt ABA Standard, Sentencing Alternatives and Procedures, supra, § 2.5(c) and Standards Relating to Probation, § 1.3 (Approved Draft 1970). They implement the general principle in Standard 2.2.

Standard 2.5(c), Sentencing Alternatives and Procedures, provides:

"A sentence not involving total confinement is to be preferred in the absence of affirmative reasons to the contrary. Examples of legitimate reasons for the selection of total confinement in a given case are:

(i) Confinement is necessary in order to protect the public from further criminal activity by the defendant; or

(ii) The defendant is in need of correctional treatment which can most effectively be provided if he is placed in total confinement; or

(iii) It would unduly depreciate the seriousness of the offense to impose a sentence other than total confinement. On the other hand, community hostility to the defendant is not a legitimate basis for imposing a sentence of total confinement."

Standard 1.3, Probation, provides:

"(a) The probation decision should not turn upon generalizations about types of offenses or the existence of a prior criminal record, but should be rooted in the facts and circumstances of each case. The court should consider the nature and circumstances of the crime, the history and character of the offender, and available institutional and community resources. Probation should be the sentence unless the sentencing court finds that:

(i) confinement is necessary to protect the public from further criminal activity by the offender; or

(ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

(iii) it would unduly depreciate the seriousness of the offense if a sentence of probation were imposed.

(b) Whether the defendant pleads guilty, pleads not guilty or intends to appeal is not relevant to the issue of whether probation is an appropriate sentence."

In order to provide a basis for appellate review and to assure the pronouncement of a reasoned sentence in accordance with these standards, I would also adopt ABA Standards, Appellate Review of Sentences, § 2.3(c) (Approved Draft 1968). It provides:

"(c) The sentencing judge should be required in every case to state his reasons for selecting the particular sentence imposed. Normally, this should be done for the record in the presence of the defendant at the time of sentence. In cases in which the sentencing judge deems it in the interest of the defendant not to state fully the reasons for the sentence in the presence of the defendant, he should prepare such a statement for transmission to the reviewing court as a part of the record."

See *State v. Horton*, 231 N.W.2d 36, 40–42 (Iowa 1975) (special concurrence); *McCleary v. State*, 49 Wis.2d 263, 182 N.W.2d 512 (1971). See also Korbakes, *Criminal Sentencing: is the Judge's sound discretion subject to review?*, 59 Judicature 112 (October 1975) and Korbakes, *Criminal Sentencing: Should the "judge's sound discretion" be explained?*, 59 Judicature 185 (November 1975).

The frustrating and complex problem of criminal sentencing calls for the most sensitive and profound exercise of judicial responsibility, not an abnegation of judicial duty and prerogatives. No problem in the law is more urgent or more deserving of our best efforts. See, generally, Coburn, *Disparity in Sentences and Appellate Review of Sentencing*, 25 Rutgers L.Rev. 207 (1971); Frankel, *Lawlessness in Sentencing*, 41 U.Cin.L.Rev. 1 (1972); Mueller, *Penology*

*on Appeal: Appellate Review of Legal but Excessive Sentences*, 15 Vand.L.Rev. 671 (1962); Comment, *Appellate Review of Sentences: A Survey*, 17 St. Louis U.L.Rev. 221 (1972); Note, 46 Iowa L.Rev. 159 (1960).

I believe we should confront this problem and take the forward step of prospective adoption of the ABA standards discussed herein as a means of solving it. These standards provide much-needed guidance to the exercise of trial court discretion and appellate review.

I would find an abuse of sentencing discretion in the present case and modify the sentence to place defendant on bench probation.

MASON, RAWLINGS and REYNOLDSON, JJ., join this dissent.